BOOS v. TOWNSHIP OF NORTHFIELD.

1. MUNICIPAL CORPORATIONS—HIGHWAYS AND STREETS—ANIMALS— EVIDENCE—TOWNSHIPS.

In an action for personal injuries brought against the defendant township for leaving a sand pile in the highway and frightening plaintiff's horse which it was claimed was a gentle and well trained animal, testimony of a witness for plaintiff that the sand pile frightened his own team, one of which was gentle and the other a somewhat wild animal, was incompetent.

2. SAME.

And evidence of a witness who might have passed the same place, so far as his testimony showed, after the accident occurred to plaintiff, was not admissible to show the condition of the surrounding objects as proof of the condition at the time of plaintiff's injury.

3. SAME—CONSTRUCTIONS—PERSONAL INJURIES—NEGLIGENCE.

Where a bridge under repairs had been partly completed and thrown open to public use, before the work was finished, and objects were left at the side of the beaten path whereby plaintiff's horse was frightened, the charge of the court that plaintiff could not recover unless the jury found that defendant was negligent in leaving the objects and material near the highway was as favorable as plaintiff was entitled to expect.

4. SAME—NEGLIGENCE—REPAIRING BRIDGE.

Where the highway was 22 feet wide at the place the injury occurred, and plaintiff's horse took fright at a pile of sand or other objects left in the highway, and it appeared that the highway was sufficiently wide for the passage of vehicles, and that the plaintiff's horse became frightened and uncontrollable at the approach to the bridge, which was left during the repairs without railings at one side, the court might properly have directed a verdict in favor of defendant township, and any possible error that may have been committed in the charge of the court at the trial was therefore immaterial and furnished no ground for complaint to the plaintiff on error.

Error to Washtenaw; Kinne, J. Submitted April 16, 1915. (Docket No. 136.) Decided June 7, 1915.

Case by Frederick Boos against the township of Northfield for personal injuries. Judgment for defendant. Plaintiff brings error. Affirmed.

*Cavanaugh & Burke,* for appellant.

*John P. Kirk* and *Arthur Brown,* for appellee.

STONE, J. Action on the case to recover damages

for personal injuries by reason of an alleged defective highway. The plaintiff was injured on Monday, August 5, 1912, while driving from the village of Whitmore Lake to his home in Webster township. About three weeks before the injury to the plaintiff the defendant township commenced the construction of a concrete and iron bridge over a small stream crossing the highway which leads to Whitmore Lake. The work was in charge of a foreman hired by the commissioner of highways, who ordered the bridge opened for use on the Saturday preceding the day of the injury. The bridge was 18 feet by 14 feet, the longer way being with the stream. The approach on the eastern side of the bridge was 22 feet in width, tapering as it neared the bridge, and was about 100 feet long, and near and at the bridge was about 9 feet above the stream. The bridge proper was furnished with iron railings on either side; but when the bridge was opened, and at the time of the injury to the plaintiff, there were no railings or barriers on either side of the approach on the eastern side of the bridge. People had traveled over the bridge after it was opened and before the plaintiff was hurt. About 30 or 40 feet west of the bridge the Ann Arbor and Whitmore Lake highway, from the south, joins the Webster highway from the west, and in the triangle-shaped portion formed by the junction of these highways the defendant, through its agents, had placed about two loads of sand. On top of the sand defendant had placed a mortar box 8 feet long by 5 feet wide, and covered with white mortar. Under the box and protruding from beneath it there were some papers or paper bags, the number and amount being in dispute; it appearing, however, that the quantity of paper exposed to view was not larger than a man's cap. These materials were left at this point when the bridge was opened. The occasion for leaving the sand and box

there was because the job was not completed. The foreman testified as follows:

"After we finished the work of constructing the bridge and put up the iron rails that had already arrived and were there, we had a little more work to do to that bridge before it was completed, and that work consisted of setting these iron rails (meaning the rails for the approaches). They had to be set in cement, and we required some of this gravel and sand to set the iron rails in, and we required it to put over the cement top to the bridge. * * * I put that sand on top of the bridge, and that sand in the triangle was material that I had there on the ground for the building of this bridge, and it was used for that purpose. I did not call the bridge complete until those rails were put on there, those 16-foot railings. This sand and gravel brought in and put in the triangle was for the purpose of making a gravel or dirt top or cover for the cement top of the bridge, and for everything we wanted."

The commissioner of highways testified as follows:

"I told them to leave the box there until the iron came to put on the approaches. The gravel that was there on the triangle was left to cover the bridge. I told Mr. Roper as soon as the road was passable that he should open it. * * * I heard it was opened on Saturday, and this sand, gravel, and cement were left there by my orders on this triangle to be used to complete the bridge."

On the occasion of the injury, the mortar box, sand, and other articles in the triangle could be observed by one on the bridge facing the west, but coming from the other side toward the bridge only the pile of sand could be seen.

While the plaintiff was driving his horse, which was well broken and gentle, and about nine years old, westward along the highway which crosses the bridge, and just as he reached the bridge, the horse became suddenly frightened at the objects in the triangle to the west of the bridge, stopped short, snorted,

became unmanageable, and backed up and pushed the buggy, while the plaintiff was seated therein, over the embankment on the north side of the eastern approach at the point where the eastern approach joined the bridge, and where there was no railing or barrier. The horse and buggy fell a distance of 7 or 8 feet, and the plaintiff was seriously injured; the whole thing happening very quickly.

The declaration alleges negligence on the part of the defendant in allowing the materials to remain in the road, and in failing to maintain a railing or barrier along the northerly side of the eastern approach to the bridge. The case was tried before a jury, which returned a verdict of no cause of action, and judgment was rendered on the verdict for the defendant. Plaintiff made a motion for a new trial which was overruled, and he has brought the record to this court upon a writ of error.

Upon the trial of the case one Herman Fisher was sworn as a witness for the plaintiff. He testified that he had driven over the bridge on Sunday at noon; that he did not remember any paper, but he saw the sand box.

"*Q.* Why do you remember that? Tell the jury why you remember seeing it, if you do remember it.

"*Counsel for Defendant:* I object to that as incompetent and immaterial.

"*Q.* What occurred when you passed over this bridge on the Sunday previous?

"*Counsel for Defendant:* We are only chargeable here with the complaint made by Mr. Boos, and with no complaints made on the part of this gentleman, if he has any.

"*The Court:* I think he may show what he saw.

"*Plaintiff's Counsel:* We are trying to show that other rigs were passing over there on Saturday and Sunday prior to this accident, and had trouble.

"*The Court:* I am inclined to think you ought not to try any other matters than this. I think he may

testify to everything he saw, but not whether he had any mishap.

"(Exception for plaintiff.)"

This question was renewed in different forms, with the same objection, ruling, and exception.

This same witness further testified:

"I have a gentle horse and I have a wild horse. I saw this obstruction in the street before I got up to it, because my horses were looking at it; I did not pay much attention to it."

One J. B. Moore was also sworn as a witness for the plaintiff, and, among other things in his testimony referring to the articles in the triangle, the following occurred:

"*Q.* You may explain where those were placed that you saw.

"*A.* On Monday in particular—Friday I did not notice much—but Monday I was with a single rig, and in particular in coming home (when I went over I did not notice it much), but when I came back the mortar box was lying down on top of some gravel, and there were some papers or bags under there or north of it that my horse—

"*Counsel for Defendant:* I object, that is incompetent.

"*Q.* Did you have some difficulty in getting past there? (Same objection.)

"*The Court:* I don't think that should be admitted. You may show the conditions; I don't know that you can show any experience this man may have had with his horse. (Exception for plaintiff.)"

The case was submitted to the jury, and, among other things, the court charged them as follows:

"There has been a large number of requests handed to me. I have looked at them as well as I can. Counsel has the right to present them, and as far as I think they are correct I give them to you.

"On the part of the defendant there are the following:

"In this cause it was the duty of the defendant

township to rebuild said bridge or culvert, and said township had the right to construct said bridge or culvert out of such material as was suitable for such purpose. It was the further right of the township to place the material so needed for such construction in some place convenient to said bridge or culvert while said construction was going on, and said township would be entitled to a reasonable time after the completion of the bridge in which to remove any unused portion of said material or tools from said highway. The officers of said township in the performance of this work were only required to exercise the care and skill that ordinarily prudent persons would exercise in matters of this kind, and if from the evidence in this case you find that the officers of the said township were not negligent in leaving the material at the point in said highway where it was on the day in question, and if said material so piled in said highway was not such an obstruction in said highway as would ordinarily tend to frighten horses in passing along said highway, then the plaintiff cannot recover in this action, and your verdict should be for the defendant.

"The absence of the iron rails along the approaches to this bridge or culvert has no bearing upon the plaintiff's right to recover, unless you find from the evidence that the township was negligent in allowing this material to remain in the highway where it was on the day in question, because the absence of the iron railings did not cause the fright of the horse, and unless you find that such materials were so piled in said highway on the day in question as to tend to frighten horses ordinarily roadworthy while being driven along the highway, then the fact that said railings were not in place has nothing to do with the cause, as the proximate cause of the accident was the fact that the horse became frightened at the material in the highway, and not because of any defect in the highway or bridge.

"Highways cannot be repaired, bridges and culverts cannot be built, without the use of materials and tools with which to do the work, and the owners of horses, in driving over public highways, must be prepared to guard against the fright of their animals at all such material and tools in the highway as it is

customary and usual to use for such work, and if the officers of this township left this material in said highway in such a condition as ordinarily prudent men would do, and if the condition of such material was not such as would frighten horses, or such as might have reasonably been expected to frighten horses in passing along the highway, then the plaintiff cannot recover, and your verdict must be for the defendant.

"The fact that the plaintiff was injured does not give him the right to recover from the defendant township for such injuries unless you find that the defendant was negligent in leaving the material where it was on the day in question, and the plaintiff has no right to demand compensation for his injuries, no matter how severe such injuries may be, unless said defendant has been guilty of negligence in this case.

"On the part of the plaintiff the following requests are given:

"It was the duty of the defendant township of Northfield to keep and maintain the bridge in question and the approaches thereto in a reasonably safe condition for public travel. If you find from the preponderance of the evidence that on the day in question and at the time of the injury of said plaintiff in the way described in the testimony there were no railings, barriers, or other protection along the north side of the approach to said bridge from the east and at the place where the north side of said approach met the northeast corner of said bridge, and if you further find from a preponderance of the testimony that at said time the defendant permitted objects, such as sand, gravel, mortar box, screen, cement, and other bags, or either of said objects to be and remain in or upon the approach of said bridge leading from the south and west, or upon the space that has been described in the testimony as the triangle west of said bridge, and that the said horse being driven by said plaintiff at said time, without any fault or negligence on the part of the plaintiff, became and was frightened thereby, and thereby became unmanageable and beyond the control of said plaintiff, and because thereof suddenly snorted and wheeled around, or partly turned or wheeled around, and backed the vehicle

driven by said horse at said time off and over the north side of the approach to said bridge at or near the place where said approach joined the northeast corner of said bridge and thus precipitated, and threw and pushed said vehicle and said plaintiff down and over said embankment, followed by the said horse, and thereby injured the said plaintiff, and if you find from the evidence that the township was guilty of negligence in the respects that I have stated and to which I have already called your attention, then in such case I instruct you that the plaintiff would be entitled to recover."

The questions involved in the errors assigned and relied upon may be summarized as follows:

(1) Did the court err in refusing to permit the witness Fisher to testify to a certain accident or occurrence which happened to him prior to the injury to the plaintiff, and under the conditions stated?

(2) Did the court err in refusing to permit the witness Moore to testify to a certain accident or occurrence which had happened to him on the same day that the plaintiff was injured, and under the conditions stated?

(3) Did the court err in charging the jury that the plaintiff could not recover unless they should find that the defendant was negligent in leaving the materials in question in the highway?

1. It is the claim of plaintiff's counsel that, under the authority of *Woodworth* v. *Railway,* 153 Mich. 108 (116 N. W. 549), and *Branch* v. *Klatt,* 173 Mich. 31 (138 N. W. 263), the court erred in excluding the testimony of the witness Fisher, above referred to. In the *Woodworth Case* the deceased's vehicle had caught in a vacant space between the planking and the defendant's track at a crossing, and it was held that evidence of prior accidents of a similar nature was admissible to show negligence on the part of the defendant in maintaining its crossing in that manner. And in the *Branch Case* the plaintiff had fallen

down a flight of steps in a theater, and the following question was asked of a witness:

"How many times per day, while you were standing in the rear of the theater, did you find people stumbling across that place?"

In the first case it will be observed that there was a claim of a defective highway, and of a defective and dangerous stairway in the last-named case.

In the instant case it is not claimed that there was any defect in the traveled portion of the highway proper, but that certain objects had been piled upon a triangle at the side of the traveled portion of the highway. We think the instant case can be readily distinguished from the cases cited. There is a further objection which is sufficient to sustain the ruling of the trial court. The plaintiff claims that the horse which he was driving was a gentle and well-broken animal. The witness Fisher had testified that in his team, which he was driving, he had a gentle horse and a wild horse. The conditions, therefore, were very different. A wild horse in a team might shy much more readily than a gentle horse, and the fact that Fisher's wild horse shied would be no evidence for the jury to consider that a gentle horse would shy also.

2. Was there error in excluding the offered testimony of the witness Moore? Clearly not; for, under the *Branch Case*, already cited, this court held that it was not permissible to prove what happened after the accident even in a defective way, citing the case of *McGrail* v. *City of Kalamazoo*, 94 Mich. 52 (53 N. W. 955). From aught that appears in the testimony of the witness Moore, he may have crossed the bridge after the accident to plaintiff. To permit subsequent occurrences to be offered in evidence would be to carry the rule too far. We should adhere to the rule we have already indicated.

3. Was there error in the charge of the court? It was the claim of the plaintiff, and seems to be conceded, that the court in its charge stated that the plaintiff could not recover unless the jury should find that the defendant was negligent, under the circumstances, in leaving the material in or near the highway. We have set forth the substance of the charge, for the purpose of showing that it was as favorable to the plaintiff as he could reasonably expect. While it is true that this bridge had been thrown open to public use, it is equally true that the job was not yet completed; that the township authorities left the articles that were piled upon the triangle there for the purpose of completing the work. Whether this was reasonable conduct upon the part of the defendant township was, we think, fairly left to the jury.

The case of *Agnew* v. *City of Corunna*, 55 Mich. 428 (21 N. W. 873, 54 Am. Rep. 383), is in point. This court there held that a statute that makes a municipality liable for an injury that is due to a street being out of repair applies only where the want of repair is the immediate cause of the injury; and it is not putting a highway out of repair to let things stand in it for a time that form no part of it. So held where a horse was frightened at the sight of a boulder that had been dug out of the roadbed and left between the gutter and the traveled part of the way until it could be removed by a person who had asked for and obtained it for building purposes. There, as here, there was no testimony that the roadway was out of repair, or that any damage claimed arose from defects in the track or highway. The court there left the question to the jury as to the cause of the accident, and the failure in duty of the corporation to remove the stone within a reasonable time, as well as the further question whether the stone in its

place was calculated to frighten horses. Justice CAMPBELL, speaking for this court, there said:

"It is customary in all towns to allow ditches to be dug, and building materials of all kinds and colors to be piled up and kept for considerable periods in the body of the street. In many, if not in most, places, the right to do this can only be had by license from the corporation, and it cannot be claimed that such a license can be granted to do a wrong, or create a nuisance. Such stones as that described are often used for building purposes, and left in the street like other building materials, and sometimes broken up for use or sawed for use. It does not seem reasonable to hold that such things can be allowed to await the convenience of a person who wishes to use them nearby, and yet not to await removal somewhere else. If this stone had been hauled to the place it occupied, in order to be used for building purposes, and left there for a considerable time, no one would think of regarding it as an actionable grievance. The use of streets for such purposes is too common to justify the owners of horses to assume it will not be allowed, and they should be prepared to guard against their animals' freaks and fears of such ordinary appearances."

The above case has often been referred to with approval. See, also, *Gilbert* v. *Railway Co.*, 51 Mich. 488 (16 N. W. 868, 47 Am. Rep. 592) ; *Beall* v. *Township of Athens*, 81 Mich. 536 (45 N. W. 1014) ; *Lambeck* v. *Railroad Co.*, 106 Mich. 512 (64 N. W. 479).

The question whether, under all the circumstances, the defendant was guilty of negligence in leaving this material where it was deposited seems to have been fairly submitted to the jury.

In *Doak* v. *Township of Saginaw*, 119 Mich. 680 (78 N. W. 883), plaintiff's horse, while being driven on a country highway, took fright, from some unknown cause, at a point 14 feet from a bridge, and backed the carriage down the embankment, injuring the plaintiff. No railings were maintained along the

sides of the highway at this point. It was held that the fright of the horse, and not the absence of railings, was the proximate cause of the accident, and that there could therefore be no recovery against the township. Chief Justice GRANT said:

"There are but few miles of country road in Michigan where the same result might not follow, if a horse became frightened and backed to the roadside. All country roads usually have ditches on each side of them. The law does not require townships to furnish protection against frightened and unmanageable horses. Only when their own misconduct causes the fright do they become liable, and then because their negligent act caused the fright, and not because of negligence in not maintaining rails or barriers. That is the settled doctrine of this State"—citing many cases, including *Agnew* v. *City of Corunna, supra.*

In *Bell* v. *Village of Wayne,* 123 Mich. 386 (82 N. W. 215, 48 L. R. A. 644, 81 Am. St. Rep. 204), a majority of this court held that a horse which becomes frightened, and backs or plunges so that, even with proper management, it cannot be kept within a good roadbed, wide enough to permit teams to pass in safety, is beyond control, within the rule relieving municipalities from liability for certain accidents where a horse is uncontrollable, but charging them where it "simply shies to an extent common and probable among horses." It was also held that, where the driver of a horse which becomes uncontrollable through fright not attributable to the negligence of the municipality charged with keeping the highway in repair sustains injuries which would have been avoided had proper barriers been maintained at the place of the accident, the fright, and not the lack of barriers, is, as a matter of law, the proximate cause of the injuries, and hence no action will lie against the municipality. See, also, *Stoll* v. *Laubengayer,* 174 Mich. 701 (140 N. W. 532).

In the instant case the highway at the point of

approach to the bridge where the injury occurred was 22 feet wide, certainly wide enough to permit teams to pass in safety. Whether the fright was attributable in this instance to the negligence of the municipality by storing the articles where they were placed, and whether the material so placed was likely to frighten horses of ordinary gentleness, were questions which were fairly submitted to the jury, and we think the plaintiff cannot justly complain of the charge of the court, for it might very properly have directed a verdict for the defendant.

The judgment of the court below is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, BIRD, MOORE, and STEERE, JJ., concurred. OSTRANDER, J., did not sit.