## STOLL *v.* LAUBENGAYER.

NEGLIGENCE—PROXIMATE CAUSE—STREETS.

> Defendant left his team standing at the side of a city street, across a foot path used by pedestrians, without hitching the horses.   Children were accustomed to use the street for coasting, and on this date the road was covered with snow and ice.   No sidewalk had been constructed on the side of the highway in question.   A child of five years of age started her sled at the top of the incline; it entered upon the path across which the team stood, and carried the child under defendant's wagon, and against the heels of the horses which kicked her or started and caused a wheel to run over the infant, fatally injuring her.  *Held,* that the act of defendant in leaving his team unguarded across the foot path was not the proximate cause of the injury.

Error to Washtenaw; Kinne, J.   Submitted October 15, 1912.  (Docket No. 66.)   Decided March 20, 1913. Rehearing denied November 3, 1913.

Case by George A. Stoll, administrator of the estate of Stella Barbara Stoll, deceased, against Herman Laubengayer for the negligent killing of decedent.   Judgment

for plaintiff. Defendant brings error. Reversed. New trial denied.

*Arthur Brown* and *Otto Haab* (*Edson R. Sunderland*, of counsel), for appellant.

*Frank A. Stivers* and *Frank C. Cole*, for appellee.

In the city of Ann Arbor, Lincoln street runs east and west. At its westerly terminus it intersects with Main street. From Main street running easterly there is a considerable downward grade. The traveled portion of Lincoln street is slightly "crowned," and no sidewalk has ever been built along the northerly side thereof. In the place where the sidewalk would be, if constructed, there runs a path for the use of foot passengers.

Defendant's mother, on January 24, 1911, occupied the dwelling at the northeast corner of Main and Lincoln streets. On that day defendant, who resides in the country, desiring to get some crocks from his mother, drove his team easterly along Lincoln towards the rear of his mother's house. Here he turned off of the traveled portion of the highway toward the north and stopped his horses near a large tree standing upon the lot line. It is contended by the plaintiff that the wagon and horses were standing facing the northeast diagonally across the path in question. Defendant testified that his wagon and horses were altogether north of the lot line and upon his mother's premises, and that he remained beside them. On the day in question the ground was covered with snow and ice, and Lincoln street from Main street running east afforded the children of the vicinity an excellent opportunity for coasting or riding down hill on hand sleighs. Foot passengers desiring to go east on Lincoln street, if they came from the south on Main street, had beaten a path through the snow, across from the middle of Lincoln street to the path along the north side of Lincoln street. These two paths formed a juncture near the rear

of Mrs. Laubengayer's house, some 60 or 65 feet east of Main street, approximately at the point where defendant had stood his team.

Plaintiff's intestate, a little girl five years and four monts of age, started from Main street to coast down the incline on Lincoln street. When part way down the incline, her sleigh struck and entered the diagonal path leading to the north side of Lincoln street. The sleigh carried her down this path, under defendant's wagon, and against the heels of his horses. The horses kicked and sprang forward, but were stopped by the large tree in front of which they were standing. Plaintiff's intestate was either kicked by one of the horses or run over by the wheel of the wagon. She suffered a fracture of the skull, from the effects of which she died a week later. Defendant's negligence is predicated upon the alleged fact that he stood his team diagonally across the path, left it unguarded, and failed to give warning to plaintiff's intestate of the danger of coasting down the path. Two eyewitnesses of the tragedy, who were sworn as witnesses for the plaintiff, testified that, when the sleigh in its downward course struck the diagonal path, the little girl lost control of it and was carried down the path and under the feet of the horses. The only other eyewitness (defendant's mother) testified on behalf of defendant that the sleigh maintained its position in the center of the road until opposite the horses, when it suddenly turned to the north, running under the horses' heels.

At the close of the testimony, defendant moved for a directed verdict upon the following grounds:

"(1) That there is no evidence in said cause showing the defendant to have been guilty of any negligence therein, and hence your verdict should be no cause of action.

"(2) That it fully appears, from the undisputed evidence in said cause, that the cause of the accident to plaintiff's intestate was due to a cause other than the negligence of the defendant, and therefore your verdict should be for the defendant.

"(3) That the proximate cause of the injury to plaintiff's

intestate was the fact that she lost control of her sled or coaster and ran under the horses' feet, and not to any negligence on the part of defendant, and therefore your verdict should be no cause of action."

This motion was denied, and the case was submitted to the jury to determine whether the defendant was guilty of negligence, and, if so, whether such negligence was the proximate cause of the injury to plaintiff's intestate. A judgment was rendered in favor of plaintiff, which defendant reviews in this court by writ of error.

BROOKE, J. (*after stating the facts*). The single meritorious question raised upon this record is whether, assuming defendant to have been negligent in standing his team over the path, as claimed by plaintiff, that act can be considered as the proximate cause of the injury suffered by plaintiff's intestate. If it can be so considered, the jury by their verdict have determined the relation of the act to the injury against the contention of the defendant.

Much learning has been displayed in attempting to accurately define the words "proximate cause." No general or authoritative definition has been evolved; the applicability of the accepted or announced definition in each case being determined by the peculiar facts or circumstances of the case. A collection of definitions, gathered from a great number of jurisdictions and a multitude of cases, will be found in 32 Cyc. p. 745. The definition favored by the compilers of 21 Am. & Eng. Enc. Law (2d Ed.), p. 485, is:

"A proximate cause, in the law of negligence, is such a cause as operates to produce particular consequences without the intervention of any independent unforeseen cause without which the injuries would not have occurred."

The Supreme Court of the United States, in the case of *Milwaukee, etc., R. Co.* v. *Kellogg*, 94 U. S. 469, defines the term as follows:

"It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. * * * We do not say that even the natural and probable consequences of a wrongful act or omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."

While this court has never apparently attempted to accurately define the term "proximate cause," it has in many cases applied the principle as enunciated in the authorities to the particular facts under consideration. An early case is *Lewis* v. *Railway Co.*, 54 Mich. 55 (19 N. W. 744, 52 Am. Rep. 790). Here the question is discussed at large, and numerous authorities cited and examined. See, also, *Selleck* v. *Railway Co.*, 58 Mich. 195 (24 N. W. 774).

In *Beall* v. *Athens Township*, 81 Mich. 536 (45 N. W. 1014), it is said:

"An injury caused by negligence, and an accident not being prevented by negligence, are very distinct in operation and effect."

In *Borck* v. *Nut Works*, 111 Mich. 129 (69 N. W. 254), it was announced that:

"The damages to be recovered in an action must always be the natural and proximate consequences of the wrongful act complained of. If a new force or power has intervened, of itself sufficient to stand as the cause of the mischief or injury, the first must be considered as too remote."

Again in *Iamurri* v. *Gas Co.*, 148 Mich. 27 (111 N. W. 884), the court, speaking through Mr. Justice Mc-ALVAY, said:

" When a particular consequence results from a wrong, it may be said that the wrong is the proximate cause of that consequence, unless there intervenes between the wrong and said consequence something which may properly be denominated a cause. If such cause intervenes, it may be said that the wrong of the defendant is too remote to be made the basis of an action. It is in such case a condition and not a cause."

See, also, *Lambeck* v. *Railroad Co.*, 106 Mich. 512 (64 N. W. 479).

In our opinion it makes little difference to plaintiff which of the many definitions examined is selected. It is, we believe, obvious that the act of defendant in permitting his team to stand over the path in question (conceding such act to have been wrongful and negligent) was not, within the reasoning of our own decisions, the proximate cause of the injury to plaintiff's intestate. The immediate cause is found in the act of the child herself, who voluntarily started her sleigh down the incline. But for this act of hers (subsequent to defendant's alleged negligent act, and therefore proximate to the injury) no accident could have occurred. Whether she voluntarily followed the diagonal path, or her sleigh took that course against her will, is a matter of no consequence, though the testimony fairly leads to the conclusion that her course down the path was brought about against her will, "because she lost control." Whether wilful or accidental, it was still proximate—the immediate efficient, direct cause preceding the injury.

This unfortunate occurrence, with its fatal result, is to be deplored. As was said in *Hargreaves* v. *Deacon*, 25 Mich. 1:

" There is some danger, in dealing with these questions, of confounding legal obligations with those sentiments

which are independent of the law, and rest merely on grounds of feeling, or moral considerations."

The judgment must be reversed, and there will be no new trial.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.