SABELA *v.* NEWPORT MINING COMPANY.

1. MASTER AND SERVANT—MINES AND MINING—PROXIMATE CAUSE.
   When a particular consequence results from a wrong it
   may be said that the wrong was the proximate cause of
   that consequence unless there intervenes between the
   wrong and its consequence something which may properly
   be denominated a cause, when it may be held that the
   alleged wrong was too remote, becoming in such a case
   a condition and not a cause.

2. SAME.
   Accordingly, in an action by a trammer in a mine who was
   injured by the negligence of a fellow-servant in putting
   back upon the track one of the cars which had been de-
   railed by the defective condition of the track and who was
   injured while he was raising the car by the negligence
   of his fellow-servant in twisting it around, straining and
   otherwise injuring him, the trial court was not in error
   in holding that the proximate cause of the injury was the
   carelessness of his fellow-servant, rather than the defective
   track.[1]

3. SAME—INCOMPETENCY—EVIDENCE.
   Testimony of the boss of one of defendant's employees that
   he was a poor worker, and other evidence showing that
   he was addicted to the habit of smoking cigarettes and
   at the time of plaintiff's injury he paid no attention to
   plaintiff, was not such evidence as warranted the trial
   court in submitting to the jury the question of the in-
   competency of the fellow-workman.

Error to Gogebic; Cooper, J. Submitted Novem-
ber 16, 1914. (Docket No. 56.) Decided March 18,
1915.

Case by George Sabela against the Newport Min-
ing Company for personal injuries. Judgment for

[1] Upon the relation of proximate cause doctrine to the master's
liability for injuries to a servant from combined negligence of
himself and fellow-servant, see note in 16 L. R. A. 819.

defendant upon a directed verdict. Plaintiff brings error. Affirmed.

*Le Gendre & Driscoll,* for appellant.

*C. W. Westerman* (*C. F. Fawsett,* of counsel), for appellee.

KUHN, J. The plaintiff was a trammer in the defendant's mine, and his duties, as claimed by him, were shoveling ore into four-wheeled steel cars, called "buggies," and pushing (or tramming) the buggies to and from chutes where they were dumped. It appears that trammers work in pairs, and the plaintiff had been the partner of one Steve Levendosky several weeks. On the day of the accident, according to the plaintiff's testimony, he protested to the trammer boss about the defective condition of the buggy and track which caused the buggy to fall between the rails occasionally, and was promised by him that the track and buggy would be fixed. A little later the plaintiff spoke of the same thing to the shift boss, the supervising head of the mine, and also asked a change of partners on the ground that Levendosky was inattentive and unsuited to the work, and it is claimed that the shift boss promised to have the defects corrected and the partner changed as soon as he could. About an hour later the accident complained of occurred, in the following manner: A loaded buggy fell between the rails, and one end was replaced on the track. Plaintiff attempted to replace the other end by the use of a piece of lagging, but while he was raising the car it is claimed Levendosky twisted it and it fell between the rails again, and the lagging caught the plaintiff, pulled him down on the car, and strained and otherwise injured him.

On the trial the plaintiff testified:

"If my partner had not swung the car the way he did swing it, nothing would have happened to me."

The trial judge held that this made the case rest solely upon the incompetence of Levendosky and the promise to change the partner, and directed a verdict for the defendant on the ground that there was no proof of incompetence in Levendosky. The plaintiff contends that the court's action was error, for the following reasons:

(1) The defective condition of the buggy and track was, concurrently with the carelessness of Levendosky, a proximate cause of the injury.

(2) There was evidence of incompetence in Levendosky.

(3) Even were there no evidence of incompetence, the defendant assumed the risk of plaintiff's injury in consequence either of Levendosky's conduct or defects in the buggy and track by its promises to make changes, for the plaintiff was induced by these promises to continue to work.

(4) Certain rulings upon the admission of testimony were erroneous.

The plaintiff in his testimony suggests that the cause of the accident was the negligence of his fellow-servant in swinging the car as he did. But conceding this to be true, it is claimed that this was only one cause of the accident, which would not have happened if it had not been for the other cause, the defective cars and track, and that these causes must be held to be concurring and both be said to be proximately the cause of the injury.

The question of what is the proximate cause of an injury, it must be conceded, is oftentimes perplexing, and it has been found difficult to lay down definite rules which may be applied to a given state of facts. The most recent discussion by this court of this question is found in the case of *Stoll* v. *Laubengayer*, 174 Mich. 701 (140 N. W. 532), where various definitions of "proximate cause" have been collected by Justice BROOKE, who wrote the opinion. A statement of the rule which is applicable here is there found taken from

the case of *Iamurri* v. *Gas Co.*, 148 Mich. 27 (111 N. W. 884):

"When a particular consequence results from a wrong, it may be said that the wrong is the proximate cause of that consequence, unless there intervenes between the wrong and said consequence something which may properly be denominated a cause. If such cause intervenes, it may be said that the wrong of the defendant is too remote to be made the basis of an action. · It is in such case a condition and not a cause." 174 Mich. page 706 (140 N. W. page 534).

In the instant case, the failure to repair the cars and tracks cannot be said to be the proximate cause of the injury. The jumping of the car from the track in itself did not cause any injury to the plaintiff. The operation of putting the buggy back on the track was not dangerous if properly conducted, and was an operation distinct in itself. In attempting this, a new and distinct cause of the accident intervened, viz., the negligence of a fellow-servant, which it must be said was the only cause which proximately caused the injury complained of.

In Labatt on Master and Servant, § 1576, it is said:

"The general rule applied in this class of cases is simply that the existence of abnormally dangerous conditions arising from the negligence of the master or his representative will not entitle an injured servant to recover, where his injury was the result, not of those conditions, but of the negligence of a coservant in respect to the manner of performing the work; that is to say, where the direct promoting cause of the injury was the negligence of a fellow-servant."

See, also, *Seccombe* v. *Railway*, 133 Mich. 170, and cases cited on page 173 (94 N. W. 747).

The testimony in support of the claim of the incompetence of Levendosky, in substance, was that the shift boss stated that he was a poor worker, and the

plaintiff's statement that "he did not take to the work very well," and that he was addicted to the habit of smoking cigarettes, and also that at the time of the accident Levendosky paid no attention to the plaintiff and compelled him to lift the car himself. Levendosky was engaged in the work of ordinary hard labor, and while it may be said that he was an unwilling worker, in that he "did not take to his work too well," in our opinion, considering the kind of work that he was engaged in, this cannot be said to be proof of incompetence. And while it may be claimed that smoking cigarettes is harmful, it does not follow that because a man smokes cigarettes he is necessarily an incompetent workman. As was said in *Jackson* v. *Schillinger Bros. Co.*, 182 Mich. 504 (148 N. W. 735):

"Many good workmen laugh and joke. Undoubtedly, some good workmen even smoke cigarettes, but we have never before heard either act urged as a ground for claiming that a man who indulges in them is incompetent to perform hard labor."

The trial court properly said to the jury that this was not such evidence as would warrant them in finding Levendosky incompetent.

As the defective condition of the buggy and tracks was not the proximate cause of the injury, and as there was no evidence of Levendosky's incompetence, it cannot be said that defendant assumed the risk of plaintiff's injury after he made complaint, as in those cases where it has been held that a defendant did assume the risk and was liable because of failure to make repairs after notice when the defective condition was the proximate cause of the injury.

In view of this conclusion, it is unnecessary to discuss the other points raised by counsel.

Judgment is affirmed.

Brooke, C. J., and McAlvay, Stone, Ostrander, Bird, Moore, and Steere, JJ., concurred.