### CALLIARI *v.* FISHER.

1. Negligence—Proximate Cause—Evidence—Animals.

  Plaintiff and defendant both left their horses unhitched in the street of a village. A paper, or some other object, frightened defendant's horse, which ran away, frightening plaintiff's horse that also started to run, and plaintiff jumped on the step of his vehicle, attempted to get into the box, but left his leg protruding; it came in contact with the sleigh of a third person who had turned out to the left, and was on the wrong side, to avoid the runaway. There was proof that defendant's horse was a known runaway. Plaintiff sustained a fractured tibia. *Held*, that the leaving of defendant's horse unhitched was not the proximate cause of the accident, that it was not a result likely to occur or to be foreseen or anticipated that plaintiff should come in contact with the vehicle on the wrong side of the street, or that his foot would protrude from the sleigh and be injured.[1]

2. Same.

  A result is the proximate effect of a given cause if the cause produced the consequence without any independent unforeseen cause intervening, but for which the accident or event would not have occurred.

3. Same—Directing Verdict.

  In an action for negligence for leaving defendant's horse unhitched, though it was liable to run away, as defendant had notice, the question of negligence was for the jury.

4. Same—Contributory Negligence.

  And the question of plaintiff's contributory negligence in also leaving his horse unhitched was one of fact.

Error to Iron; Flannigan, J. Submitted October 10, 1915. (Docket No. 36.) Decided January 3, 1916.

Case by Arthur Calliari against Nelson E. Fisher

---

[1]Negligence in leaving horse unhitched in highway is discussed in notes in 10 L. R. A. (N. S.) 845, 20 L. R. A. (N. S.) 958.

for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*I. W. Byers* (*L. A. Lyon*, of counsel), for appellant.

*Rushton & Riley*, for appellee.

Adams avenue, in the village of Iron River, runs approximately east and west. On the north side of said street, in about the middle of a block, the defendant, at the time of the accident, maintained a grocery store and meat market. Plaintiff at this time was connected with a baking establishment, his duties being to deliver the product of the bakery to customers thereof. The defendant sold goods made by the concern, for which plaintiff was employed, and it was the custom for plaintiff to replenish the stock of defendant each day. On February 27, 1912, plaintiff drove the customary vehicle, which was a sleigh with an inclosed top drawn by a two-horse team, up to defendant's place of business from the west, and stopped near the center of the street. He alighted from the sleigh and took some baked goods into the store. While he was in the store, defendant's delivery sleigh, which was a bobsleigh with an ordinary box thereon drawn by one horse, was driven up from the west to defendant's place of business, and between plaintiff's sleigh and the curbing, so that defendant's horse would be about opposite the box on plaintiff's sleigh. Neither the horse driven by the defendant, nor the team driven by the plaintiff, were tied in any manner to a hitching post or weight. While plaintiff, who was standing at the rear of his sleigh, and Fred Beauchamp, who was the driver of defendant's horse, were talking, something occurred to frighten defendant's horse, and it started to run. As the horse ran, the sleigh came in contact with a post, the crash causing the sleigh to be broken apart so that the entire sleigh, with the ex-

ception of the front bob, remained where it was. At this juncture, plaintiff's team, becoming frightened because of the crash, or because one of the horses was struck by the crossbar of the thills attached to the running horse, also started to run, and in an endeavor to stop them plaintiff ran and jumped upon the step of the sleigh, but before he could get into the inclosure his leg which protruded came in contact with a sleigh driven by one Ross, which had turned out to the left to avoid a collision. As a result plaintiff sustained a fracture of the tibia.

Evidence was introduced on behalf of plaintiff tending to show that defendant's horse was nervous, vicious, and a notorious runaway. After the accident plaintiff was taken to his home, where he remained for five or six days, when he was taken to the local hospital. At the time of the trial plaintiff had not fully recovered, in that he was not able to walk without a slight limp.

At the conclusion of the plaintiff's case, defendant made a motion for a directed verdict upon three grounds, as follows:

"(1) The undisputed testimony on the part of the plaintiff shows: That, at the time of the alleged injury, the plaintiff had left his team unhitched and unattended on a public street. That they became frightened and started to run, and while they were running the plaintiff jumped into the side door of a closed sleigh, leaving his foot and a portion of his leg outside of the door of the sleigh, and, his foot and leg coming in contact with another rig, he was injured by the contact. That the negligence of plaintiff in leaving his team unhitched and unattended, under the circumstances disclosed by the testimony on the part of the plaintiff, was the cause of the injury. That it was negligence on the part of the plaintiff to jump into his vehicle at a side door, while his horses were running, and leave his foot and leg extending outside the door; and that such negligence was the cause of his injuries as alleged in the declaration in this cause.

"(2) That the running of defendant's horse was not the proximate cause of plaintiff's injuries.

"(3) That the testimony on the part of the plaintiff shows that the plaintiff's vehicle had a covered or closed top with side doors; that while plaintiff's team was running at a rapid gait he ran, jumped into his vehicle at one of the side doors, leaving his foot and a portion of his leg extending outside of the door, and while in this position his foot and leg came in contact with another rig, and he received the injury for which he seeks to recover damages of the defendant; that he ran and jumped into his rig for the sole and only purpose of stopping his runaway team and preventing damage to his team, vehicle, and its contents, and for no other purpose whatever; that by so doing the plaintiff assumed the risk of all injury and damage he might receive, and he cannot recover of the defendant in this cause."

This motion was denied, and defendant introduced testimony. At the conclusion of the entire case, the motion was renewed for the direction of a verdict, which was again denied. The learned trial judge instructed the jury, *first*, to determine whether defendant in leaving his horse untied and unattended, considering its character, was an act of negligence; that, if they found defendant was not negligent in that particular, plaintiff could not recover. He next charged the jury to determine whether or not, considering the character of plaintiff's team as shown by the testimony, it was negligence on his part to leave his team untied and unattended. He next required the jury to determine whether plaintiff's act in attempting to stop his team in the manner in which he did was, under all the circumstances, negligent. In case the jury found the plaintiff was negligent, either in leaving his own team without being fastened or attended, or in attempting to stop them in the manner in which he did, they were instructed he could not recover. The court further charged as follows:

"Now, if you find, *first*, that the defendant was guilty of negligence, then, before you will be permitted to render a verdict for the plaintiff, you must take up and dispose of this other question, namely, was the negligence of the defendant the proximate cause of the accident? In order to say the negligence of the defendant was the proximate cause of the injury to the plaintiff, it must appear that the injury to the plaintiff was the natural and probable consequence of the negligence of the defendant, and that it should have been foreseen by an ordinarily prudent person, and therefore ought to have been foreseen by the defendant, that injury was likely to arise from the negligence of the defendant. If this injury, gentlemen, was caused by any negligence on the part of the driver of the Morrison team, then the defendant would not be liable, although you should say that he was guilty of negligence in not hitching his horse or having a man there in charge of it. If his negligence resulted in his horse running away, he would not be responsible to the plaintiff, if the plaintiff's injury resulted from the negligence of somebody else. So, if it appears in this case that the driver of the Morrison team was guilty of negligence, and that it was his negligence which caused the injury to the plaintiff, then the verdict must be for the defendant."

The jury resolved all issues of fact in favor of plaintiff, and returned a verdict in the sum of $2,500. The case is now here for review on writ of error.

BROOKE, J. (*after stating the facts*). There are several assignments of error based upon the admission or exclusion of testimony, upon the failure of the court to submit special questions preferred by the defendant, and upon alleged erroneous instructions to the jury. The meritorious question, however, presented by the record, is, in our opinion, that raised by the motion for a directed verdict upon the ground that defendant's negligence, if assumed, was not the proximate cause of plaintiff's injury. In the light of the testimony as to the character of the horse owned by defendant and

which was first to start to run away, having become frightened by a bit of paper, we think the assumption of his negligence may well be indulged. In any event, the question was one which, under the testimony, was for the determination of the jury, and their verdict seems to be fully warranted. It may likewise be said that the question of plaintiff's negligence, under all the circumstances of the case, either in leaving his own team untied and unattended, or in his attempt to stop them once they started to run away, was also a question of fact for the determination of the jury. But the determination of these three questions in plaintiff's favor, and the further determination that Ross, the driver of the rig which actually caused the injury to plaintiff, was himself free from negligence, still leaves open the question of whether defendant's negligence was the proximate cause of the injury to plaintiff.

What constitutes proximate cause in a given case is frequently a troublesome one, and much discussion of the question appears in the authorities. In the recent case of *Stoll* v. *Laubengayer*, 174 Mich. 701 (140 N. W. 532), a collection of the authorities in this State will be found. A still more recent case is *Sabela* v. *Mining Co.*, 184 Mich. 676 (151 N. W. 599).

The conclusion to be drawn from an examination of all the authorities on the question seems to be that the defendant may not be held liable for his original negligent act unless that act produces the consequences for which recovery is sought, without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred. If such cause intervenes, it may be said that the wrong of the defendant is too remote to be made the basis of an action. It would seem that the question as to whether the plaintiff himself or third persons were guilty of or free from negligence in their subsequent actions is of no particular importance in determining the ques-

tion of *proximity*. Of course, if the jury had determined that the plaintiff in attempting to stop his team acted negligently that would have ended the case. It is clear that he may have acted prudently, and still his act may have been such an independent and unforeseen cause intervening between the original negligence of the defendant and his injury as to make the original negligence too remote to support an action. That, we think, is the situation in this case. We do not think it can reasonably be said that the defendant in negligently permitting his horse to remain unsecured and unattended could or should have contemplated the possibility that the plaintiff would make the attempt he did to stop his own team while running away, and that in making said attempt he would fortuitously have permitted one of his legs to protrude beyond the opening in his sleigh, thus coming into contact with the sleigh driven by a third person (we will assume) with due care upon the left or wrong side of the street.

We are of opinion that the facts in this case bring it squarely within the reasoning adopted by the court in *Stoll* v. *Laubengayer, supra.*

For this reason the judgment must be reversed, and there will be no new trial.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.