*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PAULA GRIBBLE, Personal Representative of the
ESTATE OF MIRACLE JAMERSON,

        Plaintiff-Appellant,

v

CITY OF DETROIT, XHESJAN ZAIMI,
CHRISTOPHER BUSH, and LAMEAR DOWNES,

        Defendants-Appellees,

and

LONELL JOSHUA DIXON,

        Defendant.

UNPUBLISHED
January 14, 2026
12:16 PM

No.  370783
Wayne Circuit Court
LC No.  23-000109-NI

PAULA GRIBBLE, Personal Representative of the
ESTATE OF MIRACLE JAMERSON,

        Plaintiff-Appellee/Cross-Appellant,

v

CITY OF DETROIT, CHRISTOPHER BUSH, and
LAMEAR DOWNES,

        Defendants-Cross Appellees,

and

XHESJAN ZAIMI,

        Defendant-Appellant/Cross-Appellee,

No.  370803
Wayne Circuit Court
LC No.  23-000109-NI

-1-

and

LONELL JOSHUA DIXON,

　　　　　　Defendant.

_____

Before:  BOONSTRA, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

This case involves a fatal car crash following a Detroit police pursuit of a vehicle in which plaintiff's decedent, Miracle Jamerson, was a passenger.  As pertinent to this appeal, the trial court held that defendant City of Detroit was protected by governmental immunity on plaintiff's negligence claim, that the gross negligence claim against defendant Xhesjan Zaimi could proceed, and that plaintiff's civil conspiracy claim failed as a matter of law.  These instant appeals and cross appeal follow.  For the reasons that follow, we affirm in Docket No. 370783 and reverse in Docket No. 370803.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Jamerson was in the front passenger seat of a Saturn Aura driven by defendant Lonell Joshua Dixon,[1] and Christopher Ross-Thomas was in the backseat.  Defendant Xhesjan Zaimi, then a Detroit police officer, was driving a semi-marked police vehicle; it was a black vehicle with white writing on the side, and instead of having a light bar on the roof, the police lights were located on the inside of the windows.  Defendant Corporal Christopher Bush sat in the front passenger seat, and defendant Officer Lamear Downes was in the backseat with Zaimi's cousin, who was participating in a civilian ride-along.

The entirety of this pursuit and collision was caught on the dash camera of the police vehicle without sound.  The police vehicle was driving on residential streets, then turned left onto Eight Mile Road.  The Saturn and the police vehicle crossed paths driving in opposite directions on Eight Mile Road, and Zaimi made a U-turn and followed the Saturn.  Corporal Bush and Zaimi testified that the Saturn was traveling at a high rate of speed.  Without illuminating the police car lights or siren, the officers followed the Saturn off Eight Mile and into a neighborhood.  Zaimi illuminated a spotlight on the cab of the Saturn ostensibly to read the license plate.  The Saturn turned right onto a side street and swerved to avoid hitting a car coming from the opposite direction, then drove up on the grass and again swerved to avoid hitting a tree.  The Saturn then activated its hazard lights and continued swerving through the streets.  The police vehicle hit a speed of 65 miles per hour while following the Saturn through a residential area.

_____

[1] Dixon did not participate in the lower court proceedings and is not involved in this appeal.  We will refer to Dixon by name, and to the city and the other individually-named defendants as "defendants."

The Saturn then turned right off a residential street onto Seven Mile Road. At the intersection of Seven Mile and Telegraph, the Saturn passed several cars that were stopped at a red light and a well-lit gas station, ran the red light, collided with a sports utility vehicle (SUV) driven by a nonparty, and then hit a utility pole in the median, coming to a stop. The police vehicle was several car lengths away from the intersection when the collision occurred. The collision with the utility pole made the traffic light go out, smoke was emanating from the Saturn, and it was undrivable. Jamerson died at the scene. It was not until after the collision occurred that the lights on the police car were activated, the dash camera audio was turned on to record, and the officers exited the vehicle.

Sergeant Johanna Todd responded to the scene and, after reviewing the dash camera footage, she concluded that the officers had chased the Saturn and she referred the matter to the internal force investigation department. Sergeant Kaspar Harrison conducted the internal investigation and interviewed the officers and passengers involved. In the internal memorandum he drafted, Sergeant Harrison concluded, first, that it was unclear whether Dixon and the other occupants of the Saturn knew the car behind them was law enforcement. Second, he concluded that Zaimi did not use the spotlight solely to obtain the license plate numbers; he used the spotlight to illuminate the cab of the Saturn, and it was possible that the officers failed to use the overhead lights to avoid activation of the camera systems. Sergeant Harrison further concluded that Zaimi "physically pursued the Saturn" and that none of the officers notified anyone. The force investigation department was not informed of this incident until hours later, and it appeared that the officers had "attempt[ed] to conceal the totality of the circumstances behind the fatal crash to any responding entities." Sergeant Harrison therefore concluded that none of the involved officers could be considered credible.

Sergeant Harrison concluded that the following police department policies were violated: (1) failure to follow proper procedures when attempting to stop a vehicle; (2) failure to contact and notify zone dispatch of vehicular pursuit; (3) failure to proceed behind a suspect vehicle and not disregard any traffic laws; (4) failure to record vehicular pursuit; (5) failure to provide complete and accurate information in regard to any issue under investigation; and (6) failure to keep body cameras active during interactions at a critical scene or event. Sergeant Harrison recommended a finding of sustained misconduct for Zaimi for five of the six policy violations, and that he receive remedial training. Zaimi was later terminated from employment as a result of the incident. Dixon was charged with second-degree murder for Jamerson's death, but pleaded guilty to manslaughter and was sentenced to 10 to 15 years' imprisonment.

Plaintiff filed suit as the personal representative of the Estate of Jamerson, alleging the following counts: (I) negligence against the city, (II) gross negligence against Zaimi, (III) and (IV) violations of the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*, (V) intentional infliction of emotional distress, and (VI) civil conspiracy. Defendants moved for summary disposition of plaintiff's claims under MCR 2.116(C)(7) (governmental immunity), (8) (failure to state a claim), and (10) (no genuine issue of material fact). The trial court granted summary disposition on Count I, negligence against the city, and denied Zaimi summary disposition on Count II, gross negligence. The court granted defendants summary disposition on Counts III and IV (the ELCRA claims), Count V (intentional infliction of emotional distress), and Count VI (civil conspiracy).

In Docket No. 370783, plaintiff, Paula Gribble as the personal representative of the Estate of Miracle Jamerson, appeals by leave granted the trial court's order granting defendant city of Detroit summary disposition on plaintiff's negligence claim. In Docket No. 370803, defendant Zaimi appeals as of right the same order which denied him summary disposition on plaintiff's gross-negligence claim. In Docket No. 370803, plaintiff also cross-appeals as of right the same order insofar as it granted the city summary disposition on plaintiff's negligence claim (the same issue raised by leave granted in Docket No. 370783), as well as the trial court's grant of summary disposition as to all defendants on plaintiff's civil conspiracy claim. This Court, on its own motion, consolidated the two appeals. See *Estate of Miracle Jamerson v City of Detroit*, unpublished order of the Court of Appeals, entered August 14, 2024 (Docket No. 370783). No party has appealed the trial court's grant of summary disposition on plaintiff's three remaining claims against defendants.[2]

## II. ANALYSIS

## A. STANDARD OF REVIEW

Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10). The trial court did not specify under which subrule it granted the city summary disposition on Count I; based on its reasoning, the standard of review for MCR 2.116(C)(7) or (C)(8) applies. The trial court's decision whether to grant summary disposition is reviewed de novo. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020). Summary disposition under MCR 2.116(C)(7) is appropriate based on immunity granted by law. MCR 2.116(C)(7). Whether governmental immunity applies under the Government Tort Liability Act (GTLA), is a question of law reviewed de novo. *Kendricks v Rehfield*, 270 Mich App 679, 682; 716 NW2d 623 (2006). When reviewing a motion for summary disposition brought under MCR 2.116(C)(7), "the court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party." *Citizens Ins Co of America v Univ Physician Group*, 319 Mich App 642, 648; 902 NW2d 896 (2017). "If no material facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Mays v Snyder*, 323 Mich App 1, 25; 916 NW2d 227 (2018) (quotation marks and citation omitted), aff'd sub nom 506 Mich 157 (2020). However, if a genuine issue of material fact does exist, dismissal is inappropriate. *Dextrom v Wexford Co*, 287 Mich App 406, 429; 789 NW2d 211 (2010). Issues of statutory interpretation are also reviewed de novo. *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).

"A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). This Court reviews de novo whether the pleadings sufficiently stated a claim to survive a motion under MCR 2.116(C)(8). *Glasker-Davis*, 333 Mich App at 229. A motion for summary disposition under MCR 2.116(C)(10) is properly granted when, viewed in the light most favorable to the nonmoving party, no genuine issue of material fact exists that the

---

[2] Plaintiff also alleged a negligence claim against Dixon.

moving party is entitled to judgment as a matter of law. See *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999).

## B. MOTOR VEHICLE EXCEPTION TO GOVERNMENTAL IMMUNITY

Under the GTLA, governmental agencies are immune from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). There is no dispute that the officers were engaged in the exercise of a governmental function at the time of this incident. "A party filing suit against a governmental agency bears the burden of pleading his or her claim in avoidance of governmental immunity." *In re Bradley Estate*, 494 Mich at 377. One of the exceptions to governmental immunity is the motor-vehicle exception. MCL 691.1405. It provides:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . . [*Id*.]

This provision imposes liability on governmental agencies as vehicle owners for ordinary negligence. *Alex v Wildfong*, 460 Mich 10, 22 n 21; 594 NW2d 469 (1999). Here, there is no question that the vehicle driven by Zaimi is "a motor vehicle of which the governmental agency is owner." In their motion for summary disposition, defendants argued that because the car crash occurred between two vehicles not involving a police vehicle, any "bodily injury and property damage" did not "result[] from" Zaimi's operation of the government vehicle. MCL 691.1405. We agree.

Defendants rely on *Robinson v Detroit*, 462 Mich 439, 457; 613 NW2d 307 (2000), which held that "[g]iven the fact that the motor vehicle exception must be narrowly construed, we conclude that plaintiffs cannot satisfy the 'resulting from' language of the statute where the pursuing police vehicle did not hit the fleeing car or otherwise physically force it off the road or into another vehicle or object." Plaintiff argues the facts of this case are distinguishable from *Robinson*[3] because the police vehicles involved in the chases in *Robinson* activated their lights and sirens or otherwise identified themselves as police, *id*. at 447-449, whereas here, the officers failed to activate the lights or siren of the semi-marked car, and improperly used the spotlight to illuminate the Saturn. And plaintiff argues that the police officers engaged in other misconduct, including disobeying traffic laws and lacking probable cause to make a stop. But all of this relates only to whether the government-owned vehicle was operated negligently. The pertinent question

---

[3] Additionally, plaintiff argues that the *Robinson* test is faulty, and needs to be revisited and revised. But we have no authority to review or change a decision of the Michigan Supreme Court. See *Estate of Pearce v Eaton Co Rd Comm*, 507 Mich 183, 195; 968 NW2d 323 (2021) (stating that, "the Court of Appeals is bound to follow decisions by this Court except where those decisions have *clearly* been overruled or superseded") (quotation marks and citation omitted).

is whether, *assuming* negligence, the injuries "result[ed] from" the negligent operation of the government vehicle. MCL 691.1405.[4]

*Robinson* specifically distinguished the "resulting from" language employed here from "proximate cause," and it addressed the very factual scenario present here:

> The dissent suggests that there should be liability where a police vehicle forces an innocent intervening car to hit the fleeing vehicle causing injury to an innocent person in the fleeing vehicle. However, we do not believe that such a scenario would fit within a narrow reading of the statutory requirement of "resulting from." The dissent's position would be more in accord with a proximate cause "but for" analysis.[5] However, the statute does not say that governmental agencies are liable for injuries or property damage "proximately caused" by the negligent operation of a motor vehicle. Rather, the statute says the injuries or property damage must result from the negligent operation of a motor vehicle. Because the Legislature did not utilize proximate cause language, we will not import such an analysis here. [*Robinson*, 462 Mich at 457 n 14.]

There is no dispute in this case that the police vehicle did not come into contact with the Saturn. We further conclude that the police vehicle did not "otherwise physically force it off the road or into another vehicle or object." *Id.* at 457. The occupants of both vehicles so testified. And even if we were to agree that the police vehicle in some way forced the Saturn into the intersection, the Saturn was struck by another vehicle or object, namely, the SUV and the utility pole. The police vehicle was still several car lengths from the intersection on Seven Mile when the collision occurred. Further, the *Robinson* Court held that an officer's decision to pursue a

---

[4] We recognize that in *Robinson* the police were pursuing someone while using proper protocol. The same cannot be said here, as discussed above. This distinction does not affect our "resulting from" analysis, however. What it would affect is our assessment of whether Zaimi acted negligently, and of his corresponding duty. In *Robinson*, the Supreme Court held that "police officers giving chase owe a duty to innocent persons," including "the duty to drive with due regard for the safety of persons using the roadway." *Robinson*, 462 Mich at 451-452. However, police officers "owe no duty to a wrongdoer, whether the wrongdoer is the fleeing driver or a passenger." *Id*. at 451. The Court in *Robinson* concluded that "summary disposition on the basis of duty" was inappropriate because the record was insufficiently developed as to whether the injured passenger was an "innocent person" to whom the police owed a duty. *Id*. at 452. Although that issue is not before us on this appeal, we similarly would find summary disposition on the basis of duty to be inappropriate in this case because Zaimi does not contest (at least for purposes of this appeal) that his conduct was reckless such that he owed a duty. But, like in *Robinson*, we must then move on to separately assess the motor vehicle exception and the "resulting from" requirement of the GTLA. *Robinson*, 462 Mich at 453.

[5] As was pointed out in *Ray v Swager*, 501 Mich 52, 63; 903 NW2d 366 (2017), our Supreme Court has "not always been perfectly clear on this topic given that we have used 'proximate cause' both as a broader term referring to factual causation and legal causation together and as a narrower term referring only to legal causation."

vehicle does not constitute the negligent operation of a motor vehicle. *Id.* As a result, we conclude that Jamerson's death did not "result[] from" Zaimi's operation of the government vehicle, MCL 691.1405, and we accordingly affirm the trial court's grant of summary disposition in favor of the city on Count I of plaintiff's complaint.

## C. GROSS NEGLIGENCE OF ZAIMI

Evaluating plaintiff's claim against Zaimi requires that we consider another exception to governmental immunity relating to gross negligence by a governmental actor, MCL 691.1407(2), which provides, in relevant part, as follows:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service . . . if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

The statute defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a).

There is no dispute that subsections (a) and (b) are met, and defendants did not argue in their motion for summary disposition, nor does Zaimi argue on appeal, that his actions did not constitute gross negligence. Zaimi instead argues that even if his "conduct [was] so reckless as to demonstrate a substantial lack of concern for whether an injury results," MCL 691.1407(8)(a), his actions in failing to activate the lights or sirens, using the spotlight, driving above the speed limit, and failing to announce a police presence were not "the proximate cause" of Jamerson's death, MCL 691.1407(2)(c). We agree and conclude, as a matter of law, that Zaimi's actions were not "the proximate cause" of Jamerson's death, and we accordingly reverse the trial court with respect to its denial of Zaimi's motion for summary disposition on Count II of plaintiff's complaint.

In *Ray v Swager*, 501 Mich 52, 65; 903 NW2d 366 (2017), our Supreme Court reiterated its long-standing description of "the proximate cause" under this section of the GTLA as "the one

most immediate, efficient, and direct cause of the injury." See also *Robinson*, 462 Mich at 462.[6] The *Ray* Court stated:

> Under the GTLA, a proper proximate cause analysis must assess foreseeability and the legal responsibility of the relevant actors to determine whether the conduct of a government actor, or some other person, was "the proximate cause," that is, as our caselaw has described it, "the one most immediate, efficient, and direct cause" of the plaintiff's injuries. [*Ray*, 501 Mich at 59.]

In *Ray*, the Court clarified that proximate cause is distinct from cause-in-fact, or factual causation, which requires a showing that but for the defendant's actions, the plaintiff's injury would not have occurred. *Id*. at 63. In any negligence case, the court must determine whether the defendant's actions were a cause in fact of the plaintiff's injuries. *Id*. at 65. However, the court must also assess proximate cause, or legal causation. *Id*. Under the GTLA, one's conduct cannot be a proximate cause without also being a factual cause, so if the defendant's actions are a factual cause of injury, the court should then address legal (or proximate) causation. *Id*. at 73-74. Proximate causation is determined by assessing whether it was foreseeable that the defendant's conduct could result in harm to the plaintiff. *Id*. at 65. "It is not uncommon that more than one proximate cause contributes to an injury." *Id*. It is then necessary to assess the defendant's actions, if they were a proximate cause, alongside any other proximate causes to determine whether the defendant's actions were, or could have been, "the proximate cause," i.e., "the one most immediate, efficient, and direct cause of injury." *Id*. at 76.

> The *Ray* Court described its earlier holding in *Robinson* as follows:

> In *Robinson*, we considered "whether the city of Detroit or individual police officers face[d] civil liability for injuries sustained by passengers in vehicles fleeing from the police when the fleeing car caused an accident." We held that the government officials in question were immune from suit because a different proximate cause—"the *reckless conduct* of the drivers of the fleeing vehicles"— was the proximate cause of the plaintiff's injuries. *Robinson* is therefore consistent with our holding today. [*Id*. at 70 (citations omitted).]

Particularly after reviewing the dashcam footage, we conclude as a matter of law that Dixon's reckless conduct was "the proximate cause" of plaintiff's death. Once turning onto Seven Mile Road, Dixon accelerated the Saturn and ran the red light, resulting in the collision with the SUV and the utility pole. Even if it was foreseeable that this police chase could lead to an accident, "the one most immediate, efficient, and direct cause" of Jamerson's death was Dixon's conduct in swerving around cars and running a red light at a major intersection. Although Zaimi's conduct in pursuing Dixon's vehicle may properly be considered *a* proximate cause of Jamerson's injuries,

---

[6] In *Robinson*, the Court noted that it had initially employed this definition of "the proximate cause" in *Stoll v Laubengayer*, 174 Mich 701, 706; 140 NW 532 (1913). See *Robinson*, 462 Mich at 462.

given the circumstances and the decision in *Robinson*, there is no genuine issue of material fact that Dixon's conduct was *the* proximate cause of Jamerson's death. Therefore, Zaimi is entitled to summary disposition on Count II of plaintiff's complaint.[7]

## D. CIVIL CONSPIRACY

Lastly, the trial court properly dismissed plaintiff's claim for civil conspiracy. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Swain v Morse*, 332 Mich App 510, 530; 957 NW2d 396 (2020) (quotation marks and citation omitted). The plaintiff must prove a separate, actionable tort as the basis of the conspiracy. *Id*. at 530 n 13.

Plaintiff alleged in the complaint that it was a "group decision and plan and agreement" between all the police officers to follow the Saturn after Zaimi made the U-turn. She further alleged that the officers authored a false report indicating the basis for the stop was that the Saturn was speeding, but it was not, and that they "all worked, agreed and conspired together to conceal the illegal chase." She alleged that the officers conspired to not activate the lights and siren, conspired to not report the case to supervisors, and falsified reports about the case. On the basis of the pleadings alone, however, plaintiffs' reliance on the officers' violations of police department policy did not establish a concerted action to accomplish a criminal or unlawful purpose, or a lawful purpose by criminal or unlawful means. *Id*. at 530. And, as the trial court correctly found, "these violations are not evidence" of a conspiracy.

Additionally, plaintiff failed to articulate what tort underlies the civil-conspiracy claim in the complaint. Although plaintiff now argues that the underlying tort was the gross negligence of Zaimi, she did not make this allegation in the complaint, and a motion for summary disposition under MCR 2.116(C)(8) is based on the factual allegations in the complaint alone. *El-Khalil* 504 Mich at 159. Therefore, defendants were entitled to summary disposition under MCR 2.116(C)(8) because plaintiff failed to state a claim for civil conspiracy on which relief could be granted. Moreover, as concluded earlier in this opinion, Zaimi is entitled to summary disposition on plaintiff's gross-negligence claim; consequently, even if plaintiff had identified this as the underlying tort for the civil-conspiracy claim, it still would have failed. In addition, defendants were entitled to summary disposition on the civil conspiracy claim under MCR 2.116(C)(10) because plaintiff failed to present any evidence of a conspiracy.

---

[7] Plaintiff submitted as supplemental authority this Court's recent decision in *Sieler v Dep't of Agriculture and Rural Dev*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367323). Although *Sieler* affirmed the trial court's denial of summary disposition under the very different facts of that case, *Robinson* is directly applicable here and we faithfully apply it in concluding that Zaimi is entitled to summary disposition on Count II of plaintiff's complaint.

## III. CONCLUSION

In Docket No. 370783, we affirm the trial court's grant of summary disposition in favor of the city on Count I (negligence), and in favor of defendants on Count VI (civil conspiracy). In Docket No. 370803, we vacate the trial court's denial of summary disposition as to Count II (gross negligence against Zaimi), and remand for entry of an order granting summary disposition in favor of Zaimi on that count. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien