KRUIS *v.* GRAND RAPIDS, GRAND HAVEN & MUSKEGON
RAILWAY CO.

1. NEGLIGENCE — DEATH — PRESUMPTIONS — CONTRIBUTORY  NEGLI-
   GENCE.

   It is a presumption of law that one killed by accident was
   in the exercise of due care, no evidence being offered tend-
   ing to show negligence on the part of the deceased.

2. SAME—ELECTRICITY—TELEPHONES.

   In an action for the death of a pedestrian who came in
   contact with a wet fence charged with an electric current
   from the third rail of an electric railway, it was not error
   to submit to the jury the question of negligence of defend-
   ant telephone company, which permitted a loose wire to
   dangle from the arm of its pole into the highway for two
   months, and whether or not a reasonably prudent person
   ought not to have foreseen that the wire might come in con-
   tact with the third rail and the fence, or that children or
   some natural cause might produce injury.

3. SAME—EVIDENCE—PROXIMATE CAUSE.

   And the defendant was liable unless a responsible and in-
   dependent human agency intervened between its negligent
   act and the resulting injury.

4. SAME—PROBABLE CAUSE.

   Mere evidence that certain boys played with the wire,
   without any showing as to their age, intelligence, or re-
   sponsibility, was insufficient to relieve defendant of the
   charge of negligence.

Error to Kent; McDonald, J.   Submitted October
20, 1915.   (Docket No. 167.)   Decided January 3,
1916.

Case by Wieger Kruis, as administrator of the es-
tate of Simon Kruis, deceased, against the Grand Rap-
ids, Grand Haven & Muskegon Railway Company and
the Citizens Telephone Company, for the wrongful

death of plaintiff's decedent.   Judgment for plaintiff against defendant Telephone Company, which brings error.   Affirmed.

*Colin P. Campbell,* for appellant.

*Wykes, Dilley & Averill* and *Fred P. Geib,* for appellee.

KUHN, J.   This action is brought by the plaintiff as the administrator of the estate of his son, Simon, who was killed on the 19th day of June, 1914, by an electric current carried from the third rail on the right of way of the defendant railway company to a fence separating that right of way from the highway by a loose guy wire suspended from one of the defendant telephone company's poles.   A verdict of no cause of action was directed in favor of the railway company, and one was returned by the jury against the telephone company, the appellant here, for $2,203.25 damages. Judgment being entered for that amount, the case is brought here by writ of error.

The right of way of the railway company runs along the north side of the highway, and is inclosed by a wire fence, and the telephone poles of the defendant telephone company are in the highway near this fence. The guy wire in question was fastened to the inside end of the cross-arm on one of these poles, and drawn taut around the next pole and fastened close to the ground.   It appears conclusively from the evidence that it had been broken about two months before the accident, and had once been fastened to the railway fence, and another time to the pole.   Boys had been seen playing with it at times, and the telephone company had been twice notified before the accident that the wire was down, but apparently no attention was paid to it.

The pole from which the wire was suspended was

about 16 feet from the third rail, and the wire was long enough to reach that distance several times. There is no direct evidence as to how the guy wire came into contact with the third rail. It does not appear how the deceased came into contact with the fence. The accident occurred about 7 o'clock in the morning; the fence and ground being wet with rain that was still falling. It was the theory of the plaintiff that the wire was carried by the wind over the railway fence when it was loose and dangling. There was some testimony that there was considerable wind during the night before the accident. The weather bureau had no record of severe wind at that time, although the director admitted that winds might vary greatly within a few miles. It was the theory of the defendant that the accident was caused by the intermeddling of boys who carried the wire across the fence and brought it into contact with the third rail. Many children passed along this highway daily, going to school a half mile away or to a berry farm nearby, to which place the deceased was going, at the time of the accident, to pick berries.

Several witnesses testified that on the morning in question three or four boys were seen playing near the third rail at or about the point where the wire was down, and that they were making flashes, and one was seen with a stick. After the accident a stick and numerous short pieces of wire were found on the track, and there were indications of contact with the third rail, and that the pieces of wire had been severed by fusion. These boys had been brought into court under subpœna, but were not called upon to testify.

It is the contention of the plaintiff's counsel that the defendant was negligent in leaving this wire unfastened in the highway in such close proximity to the third rail, at a point which was passed daily by many children as well as adults, after repeated notice that

it was down, and that the question was properly submitted to the jury whether the defendant, acting as a reasonably prudent person should, ought to have anticipated that the loose wire might in the natural course of events connect the fence with the third rail and thus cause injury or death to persons using the highway. Defendant's counsel, on the other hand, contends that it was incumbent on the plaintiff to show how the wire came into contact with the fence and rail, or that it occurred without the independent intervention of responsible third persons, and that the defendant would not, in the exercise of reasonable prudence, have anticipated that the wind would blow the wire on the track, if that really happened.

The court, with reference to the question of negligence, charged the jury as follows:

"If you find that this wire was allowed to remain there hanging in the highway as the plaintiff claims, and that the defendant knew, or by ordinary diligence would have known, that fact, that is, that it was out of place and dangling in the highway, the defendant would be negligent, but he would not necessarily be liable; and, if you further find that a reasonably prudent person, under the circumstances, might have expected or anticipated that the wire would come in contact with the third rail of the interurban company, and cause such an injury, you would then be justified in finding that the defendant's negligence was the proximate cause of the injury, or one of the proximate causes. By proximate cause I mean the immediate producing cause of the injury. To make it the proximate cause, the result or injury must be the natural and probable consequence of the negligent act.

"Now, the defendant says that the death of the boy in the manner shown by the evidence was not a natural and probable consequence of the negligent act, that is, of allowing the wire to remain dangling in the highway near the third rail, but that an intervening human agency in the person of three Polish boys produced this injury. The defendant was not bound—it is true the defendant was not bound to anticipate that

unauthorized persons would interfere wrongfully with its wire. But if, under the circumstances, considering the manner in which the highway was used and the proximity of the dangerous third rail, and the fact that children frequently passed at this point in the highway—I say, considering these and all the other circumstances—if, under these circumstances, the Citizens' Telephone Company reasonably should have expected or anticipated that children, acting from boyish instincts and impulses, would interfere by meddling with or playing with the wire, the act of the defendant would be the proximate cause of the injury, notwithstanding the other intervening cause or the intervening cause. If you find that, acting as an ordinarily prudent person, the defendant might have expected that boys would do whatever you find these boys did, then the defendant would not be relieved of liability by the intervention of the three Polish boys, if you find that they did intervene in the manner claimed by the defendant."

In the absence of any evidence to the contrary, no person having seen the accident, it is to be presumed that the plaintiff's decedent was free from any contributory negligence.

We are of the opinion that no error was committed by the court in submitting to the jury the question whether a reasonably prudent person ought not to have foreseen the possibility of the wire coming into contact with the third rail and the fence, having in mind the uses of the highway and the fact that dangling wires which recoil and rebound are attractive to children to play with. That the defendant company was negligent in allowing the loose wire to remain in the condition that it did, after notice, there can be no question, and the sole question here is whether that negligence can be said to be a juridical cause of the accident.

The authorities uniformly hold that, although there may have been negligence on the part of a defendant in leaving a wire suspended as this defendant did, if

that negligence simply created a condition harmless in itself, and the accident was really caused by the intervention of a responsible human agency, the act of the intervening human agency must be said to be the proximate cause of the accident. We are not prepared to say, as a matter of law, upon this record, that the accident was caused as a result of the intervention of a responsible human agency. The record does not disclose how old the boys in question were, but that they were boys, attracted to the wire by the spirit of play, and undoubtedly with the idea of seeing the sparks fly as it touched the live third rail, is clear. It was the duty of the defendant, in order to relieve itself of liability on this theory, to show that a responsible human agency intervened, which it failed to do. The condition here created might with reason be said to have put a reasonably prudent person on notice that what occurred here, either by the wind or by the intermeddling of the boys, might result, and thus be a probable consequence of defendant's negligence. The causal connection between defendant's negligence and the injury would therefore not be broken by the intervention of the other agency.

In discussing this interesting question, Mr. Wharton, in his work on Negligence (section 143), said the following:

"So, where A. makes a fire negligently, but no mischief would result were it not from the negligence of B., who by tampering with the fire causes it to spread to C.'s field, here C. has no claim against A., supposing that B. is a free and rational agent. It would be otherwise, however, if A. built the fire negligently in a field where children were accustomed to play. Here it would be natural that the children should play with the fire; that they should do so is what the defendant should have foreseen; they are in some sense from their infancy irresponsible. Hence their acts are within the probable consequences of the defendant's negligence; and, not constituting an independent liability, do not

break the causal connection between the defendant's negligence and the injury."

See note to *Seith* v. *Electric Co.* (241 Ill. 252 [89 N. E. 425, 132 Am. St. Rep. 204]), in 24 L. R. A. (N. S.) 978; also note to *Harrison* v. *Electric Light Co.* (195 Mo. 606 [93 S. W. 951]), 7 L. R. A. (N. S.) 293.

Many interesting cases are cited in the briefs of counsel, but none of them seem to be exactly in point here. Some involve the question of trespassing on the part of children, as the case of *Iamurri* v. *Gas Co.*, 148 Mich. 27 (111 N. W. 884), which question is clearly not involved here. Here the plaintiff's decedent was not a trespasser, as he was in the public highway, where he had a right to be. He was not meddling or wrongfully interfering with any of the defendant's property.

We think the trial judge committed no error in submitting the question of proximate cause to the jury, under the circumstances of this case. That being the only question before us for review, we affirm the judgment.

STONE, C. J., and MOORE, J., concurred with KUHN, J. OSTRANDER, BIRD, STEERE, BROOKE, and PERSON, JJ., concurred in the result.