WILMARTH *v.* MICHIGAN UNITED TRACTION CO.

1. PROXIMATE CAUSE—DEFINITION.

Proximate cause is such a cause as operates to produce particular consequences without the intervention of any independent unforeseen cause without which the injuries would not have occurred.

2. ELECTRICITY—ANIMALS — LIABILITY FOR INJURIES — PROXIMATE CAUSE.

The proximate cause of the death of horses killed during an electrical storm because of electricity communicated from a trolley wire to a wire fence along an electric railroad right of way was the failure for three months to repair a "pull off" wire, which, when in its proper

place, ran from the top of a line pole to the trolley wire over the center of the track, but the end of which had in some way become detached and fallen and become entangled with the fence, and the other end of which remained attached to the eye bolt of a span wire on the pole connected with the trolley wire by an insulated "hanger" or circuit breaker, which became charged during the storm, communicating electricity to the fence, and not the electrical storm, since the danger of charging the wire by an electrical storm was a danger which should have been foreseen and guarded against.

Error to Ingham; Wiest, J.  Submitted June 15, 1917.  (Docket No. 56.)  Decided September 27, 1917.

Case by Hugh C. Wilmarth against the Michigan United Traction Company for the negligent killing of plaintiff's horses.  Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Sanford W. Ladd* (*Charles E. Lewis* and *Warren, Cady, Ladd & Hill,* of counsel), for appellant.

*L. B. Gardner* and *O. J. Hood,* for appellee.

KUHN, C. J.  On August 13, 1914, three horses of the plaintiff's were pastured in a field adjoining the electric line of the defendant company running between Owosso and Lansing.  They were grazing in the field together with other stock of the plaintiff's when a rainstorm came up during which there was more or less thunder and lightning, and when the storm had ended the horses in question were found lying against a wire fence separating the field from the defendant's right of way.  All were dead and were smoking, as well as a tree to which the fence was attached at this point, and continued to do so until a line crew arrived and cut a wire, one end of which was fastened in some way to the wire fence about 40 rods from where the horses lay, and the other end

of which ran to the top of one of defendant's poles, where it formed a connection with a span wire running from pole to pole overhead across defendant's track and supporting the trolley wire in the center. This wire running to the fence from the top of the pole had originally been installed as what is known as a "pull-off" wire, and when in its proper place ran from the top of the pole to the trolley wire over the center of the track; its purpose being to pull the trolley wire slightly towards the pole so as to adjust it to the curve of the road. The end of this pull-off wire attached to the trolley wire had in some way become detached and had fallen to the ground, where it became entangled, through accident or by some person, in the wire fence. The other end of the wire was connected by an eye bolt to the end of the span wire attached to the pole. The span wire was connected to the trolley wire by an insulated "hanger" or circuit breaker of a type in general use. After the storm this insulator was found to be "shot," so that it no longer restrained the current in the trolley wire which passed through the span wire, the fallen wire, and through the fence. When the line crew arrived shortly after the storm in response to a report of trouble, the fallen wire and the span wire to which it was connected were found hot and charged.

It is the plaintiff's theory of the case, and it was upon this theory that the case was submitted to the jury, that the defendant was negligent in allowing the pull-off wire to fall and remain there for such a length of time; that it should have been discovered in the exercise of ordinary care; and that the defendant had abundant time to remove it after the time in which it should have been discovered had passed. The evidence discloses that the wire had been in this position for a period of about three months prior to the accident. It also appears under the undisputed testimony

that the insulated hanger or circuit breaker was of standard equipment sufficient to insulate for a current of 600 volts in the defendant's line at the time in question, which voltage was the current which ran through the trolley wire necessary for the operation of the cars of the defendant. At the close of plaintiff's proofs, and again at the close of the case, a motion for a directed verdict was made in behalf of the defendant which was denied, and the case was submitted to the jury, resulting in a verdict of $595.76, upon which judgment was duly entered.

The assignments of error practically raise one question. It is the claim of the defendant that there was no actionable negligence on the part of the defendant in not removing the wire running from the pole to the fence, because the accident that really occurred could not have been anticipated, as the proximate cause was the act of God, that the undisputed facts show the fallen pull-off wire was harmless as far as defendant's current was concerned under ordinary and usual conditions, and that it was only the extraordinary accident that occurred during the electrical storm that rendered the wire a dangerous medium. In other words, it is the contention that the proximate cause of the death of the colts was the severe electrical storm, and not the failure to repair the pull-off wire.

The trial judge submitted to the jury these propositions: Whether or not under the circumstances of this case it was a negligent act on the part of the defendant to allow the pull-off wire to remain in the condition that it was; whether or not such a reasonable time had elapsed as to bring notice to the defendant; and did the defendant, after it should have discovered it, have time in which to remedy it. We are of the opinion that these questions were properly for the jury if it can be said that the alleged negligent act on the part of the defendant was the proximate cause

of the damages suffered by the plaintiff. This brings up again the much-discussed and vexatious question of determining under the facts of any particular case what the proximate cause of a particular accident is. Can it be said that an electrical storm that destroyed the insulation on the circuit breaker attached to the wire was such a condition that it can be said the defendant should have anticipated it? In *Detzur* v. *Brewing Co.*, 119 Mich. 282 (77 N. W. 948, 44 L. R. A. 500), the plaintiff was injured by the falling of a pane of glass from an upper window in the defendant's building which stood close to the public street, and there was evidence tending to show that the pane of glass had been in such a condition as to render it likely that pieces would readily be shaken out. This court said:

"Counsel contend that, if the glass fell by means of its being dislodged by the wind, the negligence of the defendant was not the proximate cause of the injury, and they complain of a refusal to instruct the jury that in such event the plaintiff should not be allowed to recover. The negligence complained of is the maintenance of a window in such a condition that the glass was liable to fall out, not necessarily from its own weight, but under the natural conditions and strain to which it was likely to be subjected. It might not be negligent to leave a broken pane, if assurance could be given that it would be undisturbed by wind or by use. But wind is an everyday occurrence. It is a condition, not necessarily a cause, and one which should be taken into consideration before determining that a broken glass is not likely to fall. The wind may have been a concurring circumstance, but it cannot be said to have been the proximate cause, and the broken glass the remote cause."

Again, in *Morrison* v. *City of Ironwood*, 189 Mich. 117 (155 N. W. 477), the plaintiff received her injuries by stepping into a ditch in the public highway which had become filled with snow, and the question

presented was whether the natural accumulation of snow caused by the snowstorm was the proximate cause of the accident. We there said:

"Viewing the testimony as to the construction of the ditch in the light most favorable to the plaintiff's claim, and taking into consideration the weather conditions prevalent in that part of the State at the time of year the accident occurred, we are of the opinion that the fall of snow was not such an independent, unforeseen cause which intervened between the claimed negligent act of the city in constructing the ditch as it did and the time of the injury that it can be said to be the proximate cause of the accident, and that the city should have anticipated the possibility of the fall of snow, and that some injury might therefore result from having the ditch unprotected and uncovered."

Here we have another action of the elements, and we do not think it unreasonable to say that in this climate the defendant should be held to the knowledge that electrical storms are very likely to occur and do the very damage that was done in this case. We are therefore of the opinion that the electrical storm cannot be said to be such an independent, unforeseen cause as to take it from under the rule laid down in the definition given in *Stoll* v. *Laubengayer*, 174 Mich. 701, (140 N. W. 532), where proximate cause is defined as:

"A proximate cause, in the law of negligence, is such a cause as operates to produce particular consequences without the intervention of any independent unforeseen cause without which the injuries would not have occurred. 21 Am. & Eng. Enc. Law (2d Ed.), p. 485."

It follows also that the failure to repair the pull-off wire can reasonably be said to be the immediate, efficient, and direct cause preceding the injury because the defendant, who was guilty of this first act of omis-

sion, might reasonably have anticipated the intervening cause as the natural and probable consequence of his own negligence.    Persons must be held to know the ordinary operation of the forces of nature and to use proper means to avert danger, especially when they are dealing with electricity, which is an invisible and impalpable force, highly dangerous to life and property, and are therefore bound to exercise care in proportion to the danger involved.    See *Seith* v. *Electric Co.*, 24 L. R. A. (N. S.) 978, and note (241 Ill. 252, 89 N. E. 425, 132 Am. St. Rep. 204) ; *Paducah, etc., Power Co.* v. *Parkman*, 52 L. R. A. (N. S.) 587 (56 Ky. 197, 160 S. W. 931) ; *Kruis* v. *Railway Co.*, 190 Mich. 105 (155 N. W. 742) ; *Southwestern, etc., Telephone Co.* v. *Robinson,* 50 Fed. 810 (1 C. C. A. 684, 16 L. R. A. 545).

We have carefully examined the charge of the court, and are satisfied that the issues involved were submitted with proper instructions, and that there is sufficient evidence of the alleged negligence of the defendant to support the verdict of the jury.

We find no error, and therefore affirm the judgment.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.