PEPLINSKI *v.* KLEINKE.

1. JUDGMENT—SPECIAL QUESTIONS—CONTAMINATION OF KEROSENE.
   In action against storekeeper and an oil distributor for death of plaintiff's wife who had purchased a quantity of kerosene which had been contaminated with gasoline, jury's answer to special question that the kerosene was contaminated when purchased by storekeeper from oil distributor did not preclude possibility of finding of further, subsequent contamination, hence the answer was not alone sufficient to support a motion for judgment for defendant storekeeper notwithstanding verdict for plaintiff.

2. TRIAL—SPECIAL QUESTIONS.
   Special questions, in order to control a general verdict, must call for findings on questions of fact which are conclusive on the real issues involved in the case.

3. NEGLIGENCE—RES IPSA LOQUITUR.
   The doctrine of *res ipsa loquitur* does not prevail in Michigan.

4. EXPLOSIVES—CONTAMINATED KEROSENE—INFERENCES—NEGLIGENCE OF STOREKEEPER.
   In action against storekeeper and an oil distributor for death due to explosion of contaminated kerosene deceased had purchased from storekeeper, evidence showing that flash point of samples of kerosene taken from purchases made two weeks prior to accident was 100 degrees and the flash point of some purchased a week later was 82 degrees, the same as that in the storekeeper's container immediately before the accident from which purchase by decedent was made, gave rise to the inference that the kerosene was contaminated shortly prior to the accident and while exclusively in the storekeeper's possession, an inference that created a question of fact properly submitted to jury on question of storekeeper's negligence, where statute then provided that flash point for kerosene should not be less than 120 degrees (Act No. 328, § 28, Pub. Acts 1931).

5. EVIDENCE—JUDICIAL NOTICE—VOLATILITY OF PETROLEUM DERIVATIVES.
   It is commonly known that increased volatility decreases the flash point in petroleum derivatives; hence as gasoline is more volatile than kerosene its flash point is lower.

For general rules governing liability of the suppliers of chattels, see 2 Restatement, Torts, §§ 388–408.

6. DEATH—EYEWITNESSES—PRESUMPTION OF DUE CARE—REBUTTAL
BY CIRCUMSTANTIAL EVIDENCE.

   A presumption that decedent who was killed while using
   kerosene alleged to have been contaminated with gasoline
   was exercising due care for her own safety obtains in the
   absence of eyewitnesses to an accident although such pre-
   sumption is rebuttable by circumstantial evidence that
   clearly establishes a lack of proper care.

7. EXPLOSIVES—USE OF KEROSENE IN STARTING A FIRE.

   The simple act of starting a fire with kerosene and without pour-
   ing the kerosene direct from the can upon a burning substance
   is not negligence *per se.*

8. SAME—DEATH—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

   In action for wrongful death of plaintiff's decedent from ex-
   plosion of kerosene alleged to have been contaminated with
   gasoline, the fact that the can used by decedent was blown
   up and the bottom found behind the stove was insufficient
   to prove decedent was guilty of contributory negligence as
   a matter of law.

9. SAME—CONTAMINATED  KEROSENE—CONTRIBUTORY  NEGLIGENCE—
EVIDENCE—QUESTION FOR JURY.

   In action for wrongful death of plaintiff's decedent from ex-
   plosion of kerosene used by decedent in building a fire and
   alleged to have been contaminated, where fireman testified
   there were no hot coals in the stove although there was some
   paper and kindling that had been scorched as if somebody
   had tried to light a fire and a next door neighbor testified
   he saw a flash and heard an explosion but there was no
   direct showing as to how the accident occurred, the question
   of decedent's contributory negligence was properly sub-
   mitted to jury.

Appeal from Bay; McCormick (James L.), J.
Submitted April 8, 1941. (Docket Nos. 21, 22,
Calendar Nos. 41,508, 41,509.) Decided September
2, 1941.

Separate actions of case by Henry Peplinski, in-
dividually and as administrator of the estate of
Clara Peplinski, deceased, against Max Kleinke and
John N. Pawlak and wife for fatal personal injuries
sustained in explosion of kerosene alleged to have

been contaminated. Cases consolidated. Verdict and judgment for plaintiff. Defendants appeal. Appeal dismissed as to defendant Kleinke on stipulation. Affirmed as to defendants Pawlak.

*Charles C. Legatz,* for plaintiff.

*Clark & Henry (Paul Harvey,* of counsel), for defendants Pawlak.

BUTZEL, J. Plaintiff brought suit individually and as administrator of the estate of his deceased wife, Clara Peplinski, against John N. and Paglia Pawlak and Max A. Kleinke, all of Bay City, Michigan. The cases were consolidated for trial and are brought to this court upon one record. The Pawlaks kept a grocery store and Kleinke owned a gasoline, kerosene, and oil distributing station in Bay City. Plaintiff charged that decedent purchased a small quantity of kerosene from the Pawlaks, who had purchased it from Kleinke; that the kerosene was contaminated with gasoline; and that when decedent attempted to use the kerosene to start a fire in her home, it exploded and caused her death.

Towards the end of April, 1939, plaintiff's wife and son came to Bay City to live with her mother, who had deeded a small frame dwelling to plaintiff and decedent. The house was equipped with electric lights but the stove and heater burned coal and wood. Decedent was familiar with the use of kerosene for starting fires and used it regularly for that purpose. On the afternoon of May 3, 1939, decedent sent her son to the Pawlaks to purchase 10 cents worth of kerosene. Early on the morning of May 5th, decedent went downstairs to start a fire in the stove. Her son, about seven years old, while com-

ing down the stairway, heard a loud explosion and his mother scream. The explosion came when he was about to step down the first step. A next door neighbor testified that he arose about 6:30 on the morning of May 5th, lit a fire, and went outdoors. He saw decedent look out the kitchen door and after he had taken about 10 steps, he saw fire shoot across the window and heard an explosion immediately thereafter. Decedent was found in agony, with all of her clothing burned off of her body. The assistant fire chief described her condition as the worst he had ever seen. She was taken to the hospital where she died the following day.

A fire captain and State trooper took a sample of the kerosene from Pawlaks' highboy and tested it to determine the flash point of the kerosene. It flashed at 80 degrees Fahrenheit, although the law in force at that time required a flash point of not less than 120 degrees Fahrenheit. Act No. 328, § 28, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–28, Stat. Ann. § 28.217). They then returned to the Pawlaks' store and confiscated the entire highboy. Samples were secured from all of the customers Pawlak named as parties who had recently purchased kerosene from him. These samples, together with one from the Pawlak highboy, were sent to Lansing where they were tested by the chief chemist of the department of agriculture by the Foster cup method. The kerosene taken from Pawlaks' highboy tested 82 degrees Fahrenheit, whereas a sample taken from a customer who had purchased kerosene from Pawlak two weeks before the accident tested 100 degrees Fahrenheit. Another sample of kerosene purchased from Pawlak one week prior to the accident tested 82 degrees. All of these samples were taken from the same kerosene that was pur-

chased by the Pawlaks from Kleinke on March 30, 1939. They had made no subsequent purchases of kerosene.

Kleinke, on March 24, 1939, purchased 315 gallons of kerosene from a refining company whose kerosene had been tested and approved by the deputy State oil inspector. Kleinke had only one delivery truck which consisted of three compartments with a total capacity of 315 gallons. Faucets at the back end of the truck were connected with each compartment. These faucets were not tagged as required by a regulation of the fire marshal. The truck was used to haul both kerosene and gasoline products, but Kleinke claimed that he thoroughly cleaned and dried the compartments of the truck before loading the kerosene prior to the sale to the Pawlaks. Kleinke testified that he hauled the kerosene from the refining company to his home where he transferred it to a storage tank used solely for kerosene; that he would take kerosene from time to time and distribute it to his customers. He claimed that he always cleaned out the tanks of his delivery truck at least 24 hours before he delivered kerosene to his customers, and that when delivering kerosene he carried no gasoline on his truck. On March 30, 1939, he delivered 10 gallons of kerosene to Pawlaks who stored it in a metal drum or highboy which was kept in the garage in the rear of the store. Kleinke's custom was to go to the highboy, look into the container and then tell the Pawlaks whether or not they needed kerosene. They would then order the requisite amount. Kleinke transferred the kerosene from his truck to the highboy in five-gallon buckets. On April 6, 1939, Kleinke made another trip with kerosene but did not deliver any to Pawlaks at that time. The police officer conducting the investiga-

tion found only one customer who still had any of the kerosene delivered on that date. This sample, according to testimony, came from the stock purchased by Kleinke on March 24, 1939, and tested 128 degrees Fahrenheit. The kerosene taken from Kleinke's highboy at his station tested 129 degrees Fahrenheit. After motions by defendants for directed verdict were denied, the case was submitted to the jury, which returned a general verdict against all of the defendants.

Defendants Pawlak requested submission of the following special question to the jury:

"Was the kerosene contaminated when defendants Pawlak acquired it from defendant Kleinke?"

The question was submitted over the objection of plaintiff's counsel and the jury answered it in the affirmative but rendered a verdict against all of the defendants in the amount of $1,000 in favor of Peplinski individually and $1,200 in his favor as administrator of his wife's estate. Upon motion for judgment *non obstante veredicto,* the Pawlaks asked that judgment of no cause of action be entered as to them, to conform to the answer to the special question. The trial court denied the motion and held that the question was not determinative of the general verdict, that it should not have been submitted, and was not controlling. We agree with this ruling since the answer to the special question does not preclude the possibility of further, subsequent contamination. Special questions, in order to control a general verdict, must call for findings on questions of fact which are conclusive on the real issues involved in the case. *Behrendt* v. *Wilcox,* 277 Mich. 232; *Farr* v. *Haggerty,* 273 Mich. 547.

Defendants appealed, but, upon payment by Kleinke of one-half of the judgment and costs in

each case, a covenant not to sue was entered into between plaintiffs and Kleinke and he dismissed his appeal. Thus, the Pawlaks are the only appellants before this court.

Appellants contend that there was no proof of any negligence on their part. They showed that they had purchased kerosene from Kleinke for several years; that it was delivered without appellants observing the act of delivery; that no gasoline, except a small quantity in the tank of an automobile, was kept on the premises; that their highboy was a standard receptacle for kerosene and was kept clean; that they had no actual notice of the contaminated nature of the kerosene they purchased. They claim that the jury should not have been allowed to indulge in guesswork and conjecture, and that they could not arrive at a verdict unless they adopted the doctrine of *res ipsa loquitur,* which does not prevail in this State. They rely on the case of *Paull* v. *McBride,* 273 Mich. 661, but there, all other kerosene tested, aside from that remaining in plaintiff's possession, was above the legal minimum flash point. In the instant case, the kerosene remaining in Pawlak's possession was unquestionably contaminated, as it tested only 82 degrees Fahrenheit. The evidence pointing most strongly to complicity on appellants' part is a variation in the test point of the kerosene purchased from appellants prior to the accident but subsequent to Kleinke's delivery and while the kerosene was exclusively in Pawlaks' possession. A sample taken from some purchased from the Pawlaks two weeks prior to the accident tested 100 degrees Fahrenheit, while a sample purchased a week later tested 82 degrees, the same as that in the highboy immediately after the accident. This showing gives rise to a legitimate inference that something must have contaminated the kerosene shortly

prior to the accident and while the kerosene was exclusively in the appellants' possession. The addition of gasoline or very cheap kerosene may account for the difference. It is commonly known that increased volatility decreases the flash point and inasmuch as gasoline is more volatile than kerosene its flash point is admittedly lower. Under the circumstances, there was evidence that created a question of fact which was properly submitted to the jury on the question of appellants' negligence. It takes the case out of the doctrine of *res ipsa loquitur.* As we stated in *Stowell* v. *Standard Oil Co.,* 139 Mich. 18:

"It is true the plaintiff's case rested largely upon inferences to be drawn from the facts proved; but it often occurs that a case meritorious in itself cannot be otherwise established. In such case the law does not permit a failure of justice unless the case rests upon mere conjecture, which we think is not the case here." (Citations.)

The only other question of merit raised by appellants was whether decedent was guilty of contributory negligence as a matter of law. As there were no eyewitnesses to the accident, a presumption exists that decedent was exercising due care for her own safety. *Gembolis* v. *Rydeski,* 258 Mich. 521; *Peck* v. *Hampel,* 293 Mich. 252, and innumerable other authorities. The presumption may be overcome by circumstantial evidence that clearly establishes a lack of proper care. *Pentz* v. *Wetsman,* 269 Mich. 496; *Loucks* v. *Fox,* 261 Mich. 338. The simple act of starting a fire with kerosene and without pouring the kerosene direct from the can upon a burning substance is not negligence *per se. McLawson* v. *Paragon Refining Co.,* 198 Mich. 222; and, also, see cases cited in *Paull* v. *McBride, supra.* The fact that the can was blown up, the bottom being found

behind the stove, is not, of itself, sufficient to prove that deceased was guilty of contributory negligence. In *McLawson* v. *Paragon Refining Co., supra,* the shattered remains of the kerosene can were found immediately in front of the stove, and the burns upon the body of decedent were such as to indicate beyond peradventure that the oil can was in his hands at the time of the explosion. However, the court held that the issue of contributory negligence was one of fact to be submitted to the jury under proper instructions. The court said:

"We are inclined to the view that it should not be held that the simple act of using kerosene for the starting of a new fire should preclude the user thereof from recovering upon the ground that he was guilty of contributory negligence as a matter of law."

A fireman testified that there were no hot coals in the stove although there was some paper and kindling that had been scorched "as if somebody had tried to light a fire." The next door neighbor testified that he saw a flash that shot across the entire window and seemed to fill the kitchen, and then he heard a loud explosion. There is no direct showing as to how the accident occurred. The question of contributory negligence is one upon which the minds of reasonable men might differ. It, therefore, was properly submitted to the jury.

The judgment is affirmed, with costs to appellees.

Sharpe, C. J., and Bushnell, Boyles, Chandler, North, and Wiest, JJ., concurred. McAllister, J., took no part in this decision.