CONSUMERS POWER CO. v. NASH et al.

SAME v. McDERMITT et al.

Nos. 10447, 10448.

Circuit Court of Appeals, Sixth Circuit.

Dec. 8, 1947.

Maxwell F. Badgley, of Jackson, Mich. (Brownell & Gault, of Flint, Mich., and W. R. Roberts, of Jackson, Mich., on the brief; Bisbee, McKone, Badgley & Mc-Inally and Maxwell F. Badgley, all of Jackson, Mich., of counsel), for appellant.

Elmer H. Groefsema, of Detroit, Mich. (Elmer, H. Groefsema, of Detroit, Mich., on the brief), for appellees.

Before SIMONS, ALLEN and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appeal record tells the tragic story of a gas explosion in and about the home of George Nash, near Flint, Michigan, on Jan. 19, 1946. The house and its contents were completely destroyed by fire and all persons in it were severely burned,— some fatally. Mrs. Nash, her daughter Annette, and Mrs. McDermitt, a visiting neighbor, died as the result of burns and injuries received. George Nash, aged three, and Clarence Colter, received burns necessitating numerous skin grafts; Georgette Nash was less seriously burned, and Mr. McDermitt was burned in attempting his wife's rescue. Nine law suits resulted which were consolidated for trial, and the jury returned a verdict for each plaintiff. Two appeals were lodged, one seeking to set aside the verdicts in favor of the members of the Nash family, and the other to set aside the verdicts for McDermitt. The appeals were consolidated, with a single record, and argued together.

■ The appellant had restored gas service to the Nash home on or about January 19, 1946, using an old service line which had been underground for almost 17 years, had been unused since April 10, 1933, and disconnected from the main line since April 20, 1944. There was substantial evidence that the service line was in bad order; that the appellant did not make a sufficient test of its condition; and had failed to correct impairment after it knew, or should have known, that gas was escaping. It was sufficient to take the case to the jury upon the issue of appellant's negligence. It is unnecessary to cite authority for the rule that we will not weigh the evidence or determine the credibility of witnesses. If a generally injurious result should have been foreseen as reasonably probable, the appellant was responsible for the injuries which followed, even though it could not have foreseen the precise manner in which the explosive gases might be vitalized. Reasonable apprehension of danger constitutes both the criterion of liability and of the causal relation between negligence and injury if there is no intervening efficient independent cause. This has been so thoroughly discussed by us in Johnson v. Kosmos Portland Cement Co., 6 Cir., 64 F.2d 193, that we need add nothing to what was there said, except to observe that Michigan law is in full accord. Kruis v. Grand Rapids etc. R. Co., 190 Mich. 105, 155 N.W. 742.

■■ Decision might well be rested on the stated principles except that a single contention of the appellant gives us pause. It is the rule in Michigan that one seeking recovery for negligence must not only show that the defendant was negligent but that he himself was free from contributory negligence. Faustman v. Hewitt, 274 Mich. 458, 264 N.W. 863; Collar v. Maycroft, 274 Mich. 376, 264 N.W. 407; Pulford v. Mouw, 279 Mich. 376, 272 N.W. 713; Slingerland v. Snell, 283 Mich. 524, 278 N.W. 672. In death cases, however, there is a presumption that the decedent was exercising due care, though where there is an eyewitness to the accident the presumption disappears and the question of the plaintiff's contributory negligence is at large upon the proofs. Foote v. Huelster, 272 Mich. 194, 261 N.W. 296; Faustman v. Hewitt, supra; Collar v. Maycroft, supra.

Clarence Colter, who survived the explosion and fire, was available in court at the time of the trial. He was ten years old at the time of the accident and eleven when the case was tried. It is the appellant's contention that because he was in the house at the time of the explosion he was therefore an eyewitness, and as the only party capable of testifying to the activities of the injured and deceased persons during the period immediately preceding the accident, he should have been called by the plaintiffs in order to sustain the burden of proof which rested upon them to show that they and their decedents were free from

negligence, and, this not having been done, the case in respect to all injured adults failed and the court should have granted the appellant's motion for a directed verdict.

In evaluating this contention it becomes necessary to consider the scope of the Michigan doctrine. In Teipel v. Hilsendegen, 44 Mich. 461, 7 N.W. 82, Mr. Justice Cooley, as early as 1891, conceding that absence of contributory negligence is part of the plaintiff's case, observed that if the facts and circumstances show negligence from which injury followed as a direct and proximate consequence and do not show any contributory negligence, a prima facie case is made out for the jury. It is not necessary that absence of contributory negligence should be shown beyond cavil or question, and if the circumstances are such that reasonable minds might draw different conclusions respecting plaintiff's fault, he is entitled to go to the jury upon the facts. In Cole v. Railway Co., 81 Mich. 156, 45 N.W. 983, the failure of an eyewitness to testify did not entitle defendant to a directed verdict. Later cases have held that the question of contributory negligence is always a question of fact for the jury, Thurkow v. City of Detroit, 292 Mich. 617, 291 N.W. 29; that freedom from negligence may be deduced from circumstances, Burghardt v. Railway, 206 Mich. 545, 173 N.W. 360, 5 A.L.R. 1333; and that contributory negligence, as a matter of law, cannot be imputed from failure to anticipate unlawful acts, Sanderson v. Barkman, 264 Mich. 152, 249 N.W. 492.

The rule that in a death case there may be no verdict for the plaintiff if there is an eyewitness available who has not been called, seems to have been developed primarily in automobile collision cases, and the appellant's references are almost solely to such cases. It would appear to be a rule of necessity applicable to dangerous modern instrumentalities in the hands of the general public. Reason appears to support the rule, for observation may throw light on the conduct of the decedent for whom the presumption would otherwise be of avail, and injustice be averted. Presumptions are but generalizations from experience and must give way to evidence, when living witnesses may intelligently speak. The sensory impressions of eyewitnesses to an automobile collision, where time interval between fault and injury is frequently measurable, permit a judgment to be formed both as to primary and contributory negligence. It is difficult to comprehend, however, in what respect the impressions of one injured by the instantaneous and unexpected explosion of gases, can aid court or jury to appraise causes or conduct. We have found no case that extends the eyewitness rule to an accident caused by an explosion. Peplinski v. Kleinke, 299 Mich. 86, 299 N.W. 818, does not so hold. There were no eyewitnesses to the accident there involved and the case was decided upon the presumption that the decedent was exercising due care for her own safety.

We do not conceive that Erie RR Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, in requiring us to follow local law, compels expansion of local doctrine to situations beyond the ambit of prior adjudication, nor that we are compelled to seek what Cardozo called "certainty in the word, the outward sign," and are precluded from seeking "something deeper, a certainty of ends and aims." [1] We are not convinced that the Michigan rule requires us to consider as an eyewitness one unable to record impressions of value as to negligence when a victim of the force of explosive gases suddenly released.

Another reason contributes to our conclusion. Appellant's counsel, with fertile speculation, catalogs possible acts or omissions which might have led to the concentration of explosive gases other than the negligence of the appellant, or have evidenced lack of due care on the part of one or more of the injured persons, and urges that young Colter might have supplied evidence in that respect. The possibilities are mainly limited to the basement of the Nash home, and there is no evidence that the boy was in the basement during the period pre-

[1] "Jurisprudence," an address to the New York Bar. "Selected Writings of Benjamin Nathan Cardozo" 1947, p. 9.

ceding the explosion. Finally, it is not conceivable that a boy of ten, with no experience in a home supplied with gas, could have known, even if he smelled gas, that its concentration had reached a dangerous stage, or have been able to form a judgment as to whether others had sensed such concentration. We are of the view that the question of contributory negligence was an issue for the jury upon the facts, and that we are bound by its verdict.

The damages awarded to some of the plaintiffs were undoubtedly large, but the injuries were grave. It is not the province of this court to determine whether the verdicts were excessive,—that question lay with the court below upon a motion for new trial. Grand Trunk Western RR v. Heatlie, 6 Cir., 48 F.2d 759. Decision rested in the sound discretion of the district judge who saw and heard the witnesses and observed the injuries of those who survived. We are not persuaded that it was abused. No other prejudicial error properly reserved for review is perceived.

The judgments are affirmed.